## CASTRO *v.* STATE OF INDIANA.

[No. 24,766. Filed April 21, 1925. Rehearing denied July 2, 1925.]

1. HOMICIDE.—*Evidence admitted by the court without objection must be presumed not harmful.*—In a trial for murder references made in the evidence to the accused as a Mexican, to the foreign neighborhood in which he lived, to the fact that the accusing witnesses were Mexicans, etc., are not necessarily harmful to the accused, and in the absence of an affirmative showing of prejudice, the appellate court must assume that what counsel did not object to, and the trial court permitted was not harmful. p. 390.

2. CRIMINAL LAW.—*Without affirmative showing of error the appellate court will indulge presumptions sustaining lower court.*—When a court trying an appeal is left without an affirmative showing, and must indulge presumptions, it will indulge

those which tend to uphold the action of the court below, and not those which tend to overthrow the action.  p. 390.

3. CRIMINAL LAW.—*No error can be predicated upon evidence stricken out, or to which objection is sustained.*—No error can be predicated on the introduction of hearsay evidence, when objections to some of it are sustained, and the remainder is ordered stricken out by the court with the instruction that it is hearsay.  p. 391.

4. CRIMINAL LAW.—*On appeal the court will presume that defendant was properly defended below, in the absence of any proper showing.*—Upon a representation by counsel for appellant that the attorney appointed by the court to represent a pauper defendant in the trial court exhibited neglect, apathy and lack of diligence in conducting the defense the Supreme Court must presume that the trial court was able to judge of the ability, energy and diligence of the attorney, and that he was properly defended, in the absence of any showing of negligence other than the *ex parte* affidavit of appellant who could not understand the language.  p. 391.

5. CRIMINAL LAW.—*Conviction will not be reversed upon mere suspicion that defendant was not efficiently defended.*—Where a defendant has been found guilty on evidence that amply supports the verdict, and the trial court, by overruling his motion for a new trial has adjudged that he had a fair trial, the Supreme Court will not reverse the judgment of conviction upon mere suspicion that he was not efficiently defended by his attorney.  p. 391.

6. CRIMINAL LAW.—*Without showing of lack of full facts at trial or absence of witnesses, defendant not entitled to new trial.*—The opinion expressed in an affidavit filed with motion for new trial that if a proper defense had been made by attorney for defendant, he might have been acquitted or the penalty mitigated, is not sufficient to warrant a direction for a new trial, in the absence of a showing that facts were not fully presented at the trial, or that other witnesses might have been called.  p. 392.

From Lake Criminal Court; *Martin J. Smith,* Judge.

Jose Castro was convicted of murder in the first degree and he appeals.  *Affirmed.*

*Julius I. Puente* and *William H. Matthew,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *U. S. Lesh,* for the State.

EWBANK, J.—Appellant was charged by indictment with the crime of murder in the first degree, and being found guilty was sentenced to die by electrocution. Overruling his motion for a new trial is assigned as error. The undisputed evidence showed that Paul Budich, a detective or "plain clothes" police officer of Indiana Harbor, was wounded while in that city by a bullet fired from appellant's pistol on April 10, 1924, which passed through his liver and intestines, and died of that wound in a hospital at Gary, Indiana, on April 20; and that appellant was under arrest continuously from the day of the shooting and was twice taken to see Budich at the hospital. And the record discloses that the indictment on which appellant was tried was returned April 24, that he was arraigned May 7, and was tried and found guilty May 23, 1924.

The first specification in the motion for a new trial is that the verdict is not sustained by sufficient evidence. Appellant gave his testimony through an interpreter, and testified in his own behalf that he was twenty-three years old and unmarried, that his parents were living, and that his home is at Nogales, Arizona (which is near the Mexican border) ; that five years before he had worked in the grape fields of California; that he had been in Indiana Harbor a little more than a year, for the first eight months of which he had operated a boarding house there; that he had never worked for anybody else there; that he was at the penal farm thirty days, the charge against him having been the sale of liquor; that he owned the pistol with which Budich was shot; that he had bought it to defend his house and was carrying it that day because he had no home or fixed room to keep it in, but was sleeping any place he would see a hotel or boarding house; that he had quit keeping the boarding house about four months before the trial; that he was carrying the pistol

in his belt when he met Budich in the street on Pennsylvania avenue, about a block from the place kept by Gonzales; that Budich came up and caught hold of him and tried to take the pistol from him; that Budich "grabbed" it by the barrel, and he (appellant) struggled with him a little bit, when the pistol went off, and he then "grabbed" the pistol and ran down the street; but that he was so drunk he did not know what he was doing, and could not remember what happened, and did not know Budich was shot until they took him to the hospital at Gary to see the injured man; that both he and Budich had hold of the gun when it went off; that when Budich took hold of the barrel of the pistol he began striking appellant with it, and then appellant grappled with him and that was when it went off; that Budich did not say he was a policeman or say anything else, and appellant had never seen him before he grabbed the pistol; and that appellant had bought a drink of "moonshine" at the place kept by Gonzales that morning and also a bottle of moonshine which he carried in his pocket at the time. No other witness was called by the defense. But five witnesses testified in rebuttal that when arrested, a few moments after the fatal shot was fired, appellant was not drunk, that there was no indication that he had been drinking, and that no bottle of liquor was found on him. And two witness named Gonzales, called by the state, testified that they were talking in a room where one of them kept soda, near beer and cigars for sale, when appellant came in and stood by the bar; that about two minutes later Budich came in and stood beside appellant, when he drew his coat open at one side, and spoke to appellant, saying something which the witnesses did not hear distinctly, and that a shot, or maybe two shots were then fired by appellant, and Budich fell to the floor; that appellant went outside with the gun in his

hand, and Budich said to follow him, that "he hit me," and he, himself, went outside and shot at appellant on the street, and appellant shot at him while running down the street; that Budich called to persons outside that "he shot me"; that after getting around the corner appellant "took the bullets out and filled up his gun again"; that persons were running after appellant, when he looked back and pointed something like a gun at them, and they stopped; that a policeman ran after appellant and he dodged around the corner of a building and "pulled a gun on" the policeman, and fired a shot at him from about twenty feet away, and then ran into a back yard; that the policeman fired at him, when appellant lay down and fired again at the policeman; that he was seen to kneel down and fire two shots; that he then ran to a four foot board fence, put his hands on it and jumped over it; that as he ran he also fired a shot at another officer, who returned the fire; that from the yard he went into the side door of a pool room with his pistol in his hand, where the proprietor grappled with him, and some policemen came in and arrested him; that as a policeman came up to them in the pool room appellant "stuck the gun right at" that officer and pulled the trigger, but the gun did not go off; that the officer then seized his hand and pushed him back over the counter and lay upon him, and they struggled there until other officers came and took the gun away from him; that the gun was of thirty-eight caliber, and contained two cartridges with steel jacketed bullets, like the one with which Budich was wounded, and one empty shell, the other chambers being empty; that appellant had talked English to two witnesses, but spoke Spanish to others; that he ran four blocks after the first shot was fired, doubling back to the place where he was captured, about two blocks in a direct line from where Budich was shot. If the jury

believed what was testified by the witnesses for the state and did not credit appellant's testimony to the contrary this evidence was sufficient to justify the verdict they returned.

No exceptions were reserved to the action of the court in admitting evidence, nor does the motion for a new trial point out any specific rulings complained of. But appellant filed with his motion for a new trial an affidavit that he is a citizen of Mexico, having been born there, and cannot speak or write the English language, that he was unable to employ counsel to defend him, and that counsel assigned to him wholly failed to make a proper defense. This being a capital case we shall briefly notice the questions thus sought to be raised.

Counsel complain of the introduction of certain evidence at the trial. But the references to appellant as a "Mexican," the testimony that the section of town where the shooting occurred was peopled largely by "foreigners," mostly Mexican and Roumanian, and that the principal witnesses for the state, who at the time of the shooting were present in the soft drink parlor kept by one of them where they said the fatal shot was fired, were both Mexicans, and that the wife and two children of the dead man were present in the court room, were not necessarily harmful to appellant, and in the absence of an affirmative showing that he was prejudiced we must assume that what counsel did not object to and the trial court permitted was not harmful. When a court trying an appeal is left without an affirmative showing, and must indulge presumptions, it will indulge those which tend to uphold the action of the court below, and not those which tend to overthrow such action.

Some hearsay evidence was volunteered by a witness to which counsel for appellant objected, and some by another witness to which it does not appear that a

proper objection was made. But in the first in-
3. stance the court sustained each of the objections
made by counsel for appellant, and in the other
case he ordered the evidence stricken out and stated
that it was only hearsay, and was not to be considered
at all as evidence in the case.

An affidavit filed with the motion for a new trial as-
serts that appellant did not know of the assignment of
counsel to defend him until the morning of the day of
trial, that he and said counsel had no common language
in which to communicate with each other, and that said
counsel exhibited neglect, incompetence, apathy and lack
of diligence in conducting the defense. But the
4. court before which the trial was conducted was
better able to judge of the ability, energy and
diligence of a member of the local bar in the conduct
of a matter before it than this court, sitting in a dis-
tant city, and having no basis for concluding that such
attorney was incompetent but some conclusions of fact
asserted in an *ex parte* affidavit of appellant, who says
he knew nothing about the law that was being admin-
istered, and could understand little of what was being
said.

It is the imperative duty of the trial court to see that
a poor person charged with crime is properly defended.
And mere perfunctory action by an attorney as-
5. suming to represent one accused of crime which
falls short of presenting the evidence favorable
to him and invoking the rules of law intended to pre-
vent conviction for an offense of which the accused is
innocent, or the imposition of a penalty more severe
than is deserved, should not be tolerated. But where
a defendant has been found guilty on evidence that
amply supports the verdict, and the trial court, by over-
ruling his motion for a new trial has adjudged that
he had a fair trial, it does not follow that this court

can reverse the judgment of conviction upon mere suspicion that he was not efficiently defended by his attorney, or because of what other counsel employed in this court, who were not present at the trial, may say about that attorney.

In his affidavit filed with the motion for a new trial appellant expresses the opinion that if a proper defense had been made he might have been acquitted or the severity of the penalty imposed might have been mitigated. But he does not suggest that there was any fact known to him or which he could prove by other witnesses that was not fully presented at his trial, or that there were any other witnesses in his behalf whom his attorney might or should have called to testify, or whose testimony could be obtained if a new trial were granted.

The judgment is affirmed.