EAGLE *v.* STATE OF INDIANA.

[No. 27,809.   Filed May 20, 1943.   Rehearing denied
June 14, 1944.]

*Norval K. Harris,* of Sullivan, for appellant.

*James A. Emmert,* Attorney General, and *Frank E. Coughlin,* Deputy Attorney General, for the State.

RICHMAN, C. J.—Upon his plea of guilty to an affidavit charging automobile banditry appellant was sentenced to a term of 25 years in the state reformatory. About a month later he filed a verified petition to vacate the judgment and for leave to change his plea to not guilty. After hearing, his petition was denied and the only error assigned is on this ruling.

The question for the trial court was whether appellant entered his plea of guilty "freely and understandingly." *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389; *Loucks* v. *State* (1937), 213 Ind. 108, 11 N. E. (2d) 694; *Crooks* v. *State* (1938), 214 Ind. 505, 15 N. E. (2d) 359; *Chaplin* v. *State* (1941), 219 Ind. 55, 36 N. E. (2d) 277. The question for this court is whether the trial court's denial of the petition was an abuse of a sound judicial discretion. *Dobosky* v. *State* (1915), 183 Ind. 488, 491, 109 N. E. 742, 743; *Crooks* v. *State, supra.* Conflicts in the evidence are to be resolved in favor of the decision of the trial judge who saw and heard the witnesses and had personal knowledge of the prior proceedings when the plea of guilty was accepted. *Dobosky* v. *State, supra.*

The affidavit was based upon § 10-4710, Burns' 1943 Replacement, § 2573, Baldwin's 1934, and charged that he committed a felony, namely rape, and "attempted to escape and intended to escape" in an automobile which he had near the scene of the assault. At the hearing the court permitted and encouraged a full disclosure of all facts deemed important by appellant's present counsel. There is conflict between the statements of appellant on direct examination and his admissions on cross-examination. The latter are not much at variance with the testimony of his prior attorney,

the officers who arrested him, and the sheriff by whom he was confined. The offense was committed on Friday. That evening he signed a statement as to the facts surrounding the offense. There was no attempt to prove that the statement was procured by duress or mistreatment on the part of the peace officers. On Saturday Mr. J. M. Johns, one of the older members of the bar at Rockville, visited another prisoner in the jail and was consulted by appellant with whom he conversed again on Monday. On Tuesday appellant was taken into court and asked for the appointment of an attorney to represent him at public expense and a formal order of Johns' appointment was then made. A further conference between them was held in an adjoining room and later the prosecuting attorney was called in for information with respect to the probable sentence and the sheriff heard some of the ensuing conversation. On the same day he pleaded guilty and was sentenced.

Mr. Johns, who was then president of the local bar association, testified to forty years' experience in the practice of law, stating that he had represented defendants in almost every kind of a criminal case including automobile banditry and that he advised appellant fully as to the law respecting the offense charged. No questions were asked of him or of appellant by his present counsel as to the extent to which the facts were disclosed in the several conferences. It does appear that Mr. Johns had copies of appellant's statement and the affidavit when he talked with his client. It is quite improbable that a lawyer with his experience would have failed to inquire into the facts as a basis for a possible defense. He stated near the conclusion of his testimony that appellant "thoroughly understood the law and the facts" and expressed the opinion that appellant's plea of guilty "was entered freely and under-

standingly and with the full knowledge of the consequences that would follow such a plea." In his petition appellant stated that had Mr. Johns been more fully informed as to the facts he would have discovered that appellant was not guilty of rape but he abandoned this contention in the hearing and relied on lack of proper information from Mr. Johns as to the escape element of the crime of automobile banditry. On direct examination he testified:

"Q. At any time before you were brought into the court room to enter your plea of guilty was it explained to you that a charge of automobile banditry was that you escaped or intended to escape in an automobile?

A. Yes, he explained what automobile banditry was to me.

Q. What did he tell you?

A. He told me it was escaping and planning to escape.

Q. Did you plan to escape in an automobile?

A. No.

Q. Did you tell him you didn't plan to escape?

A. Yes, sir."

On cross-examination his testimony was as follows:

"Q. And Mr. Johns explained the offense that you were charged with in detail, didn't he?

A. He explained it you know, but I never understood it. I never understood automobile banditry.

Q. You are not an attorney?

A. No.

Q. He explained it in great detail, didn't he?

A. He explained it so I could understand it but I didn't."

He was interrogated by the court as follows:

"Q. You recall that the court had you and your attorney sitting over here, and that the Court at

the time you were ready to enter a plea of guilty asked you if you had ever been in court before or in trouble before and I believe you said that you had not. Then the court at that time told you that in the event that a plea of guilty was entered in this case that the court would find you guilty according to the plea and would sentence you for your offense. Do you remember that statement?

A. Yes.

Q. And that if you didn't enter a plea of guilty you had a right to a trial by jury, and that at some future time we would set it down for trial, and that in as much as the September Term had started it would be some little time before the court could hear it. Do you remember the court telling you that?

A. Yes.

Q. So, at that time you understood that your plea of guilty would result in your being sentenced, is that right?

A. Yes.

Q. In other words you knew at that time the consequences of your act of entering a plea of guilty, didn't you?

A. Yes, sir."

His own testimony accords with that of Mr. Johns and the sheriff that the prosecuting attorney informed him in their presence that a sentence of twenty-five years would be recommended and appellant testified he expected to get it when he entered his plea.

Appellant's father is dead and his mother who remarried has a large family. At the age of fourteen he pleaded guilty to a charge of vehicle taking but was not sentenced. He finished the eighth grade at the age of sixteen. He was in a C. C. C. camp for twenty-two months and in the United States army for three years from which he was discharged after court martial for being away without leave. Thereafter he served all but three days of a ninety-day sentence at the penal

farm on the charge of petit larceny to which he pleaded guilty. He had no trade and no regular employment. He was twenty-six years old and had been married about eight months at the time of this offense. His wife, her father and brother visited him in the jail. Apparently he owned the automobile which later was turned over to his father-in-law. He had thirty dollars on his person which he gave to the sheriff for his wife.

The facts above related clearly distinguish this case from the cases of *Atkinson* v. *State* (1920), 190 Ind. 1, 128 N. E. 433; *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Cassidy* v. *State* (1929), 201 Ind. 311, 168 N. E. 18; *Harris and May* v. *State* (1932), 203 Ind. 505, 181 N. E. 33; *Castro* v. *State* (1925), 196 Ind. 385, 147 N. E. 321; *Dobosky* v. *State* and *Rhodes* v. *State, supra,* and fall far short of disclosing an abuse of discretion in denying the petition.

Judgment affirmed.

NOTE.—Reported in 48 N. E. (2d) 811.