BOLTON *v*. STATE OF INDIANA

[No. 28,033.   Filed May 2, 1945.]

*Oscar B. Thiel,* of Gary, for appellant.

*James A. Emmert,* Attorney General, and *Frank E. Coughlin,* First Assistant Attorney General, for the State.

RICHMAN, J.—To an affidavit against appellant and two others, Taylor and Hall, appellant pleaded not guilty, waived a jury, was tried in January, 1942, convicted and given an indeterminate sentence of 10 to 25 years in the State Prison on the offense of robbery as defined in the first part of § 10-4101, Burns' 1933. The other two defendants pleaded guilty and were given the same penalty but because of their age they were sent

to the Reformatory. Their testimony at appellant's trial constituted the sole direct evidence connecting appellant with the crime.

In September, 1943, appellant filed a verified petition for writ of error *coram nobis* to which were attached affidavits of Taylor and Hall recanting the former testimony wherein they implicated appellant and asserting that they were coerced into so testifying by the deputy prosecuting attorney who threatened them with prosecution under the second part of § 10-4101, with penalty of life imprisonment, if they did not help convict appellant. An answer filed by the state exhibited the affidavit of the deputy denying such coercion and stating that their testimony was given "freely, understandingly and voluntarily." Attached also was the affidavit of a police officer stating that before the trial Hall and Taylor confessed to him the same facts to which they later testified and that such confession was voluntary and "not made under the influence of fear produced by threats, intimidation or undue influence."

The same judge who presided at the trial heard the evidence on the petition for the writ of error *coram nobis*. It consisted of the verified petition, the State's answer, all the affidavits above mentioned, an additional more detailed affidavit from each of the recanting witnesses, the affidavit of appellant that he had no part in the crime, and the complete record of all the evidence given at the trial. At the conclusion of the hearing the petition was overruled and judgment entered denying the writ. In this appeal therefrom all the evidence submitted at the hearing is brought into the record by bill of exceptions.

Appellant insists that the trial court was required to set aside the conviction and to grant a new trial since the only testimony to sustain the conviction was later

repudiated by the witnesses. We have read the entire record and found therein detailed accounts of the activities of the three defendants prior to and about the time the robbery was committed, from which complete story we would be able, if it were within our province, to infer that appellant's confederates told the truth at the trial and not in their recanting affidavits.

Whether a confession by a witness that he gave perjured testimony at the trial is presented in an ordinary motion for new trial or by a petition for writ of error *coram nobis* the question is: When did the witnesses tell the truth? The tribunal by which it is to be decided is the trial court, subject of course to review but not under rules more favorable to appellant than apply to review of a trial court's determination, upon conflicting evidence, of any other question of fact. The reasons are excellently stated, with citation of authorities which we omit, by Justice Steinert in *State* v. *Wynn* (1934), 178 Wash. 287, 34 P.(2d) 900 as follows:

> "Recantation by an important witness of his or her testimony at the trial does not necessarily, or as a matter of law, entitle the defendant to a new trial. The determination of such matters rests in the sound discretion of the trial court and its action will not be set aside except for clear and manifest abuse. The trial judge is in a peculiarly advantageous position, under the prevailing circumstances, to pass upon the showing made for a new trial. He has the benefit of observing the witnesses at the time of the trial, is able to appraise the variable weight to be given to their subsequent affidavits, and can often discern and assay the incidents, the influences, and the motives that prompted the recantation. He is, therefore, best qualified to determine what credence or consideration should be given to the retraction, and his opinion is accordingly entitled to great weight. If the rule were otherwise, the right of new trial

would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court. The untrustworthy character of recanting testimony is well known by those experienced in the trial of criminal cases, and when such testimony is offered it calls for a rigid scrutiny. When the trial court, after careful consideration, has rejected such testimony, or has determined that it is of doubtful or insignificant value, its action will not be lightly set aside by an appellate court."

To this statement we add the following from the concurring opinion of Judge Cardozo in *People* v. *Shilitano* (1916), 218 N. Y. 161, 112 N. E. 733, L. R. A. 1916F, 1044:

"Three witnesses for the prosecution have stated under oath to the trial judge that their testimony upon the trial was false. It became his duty to say whether they were conscience-stricken penitents, or criminal conspirators to defeat the ends of justice. He has held them to be conspirators. Unless we can say that he was wrong, and that they were not conspirators, but penitents, we have no right to reverse his order. But I do not see how we can say that he was wrong. I do not understand that even the judges who think this judgment should be reversed assert that he was wrong. Their view is that, with such a conflict of oaths, he should have abandoned the search for truth, and turned it over to a jury. That would have been an easy avenue of escape from a solemn responsibility, but I cannot satisfy myself that along that avenue lay the path of duty. I think it was the duty of the trial judge to try the facts, and determine as best he could where the likelihood of truth lay."

In a similar case, *People* v. *Lee* (1935), 9 Cal. App. (2d) 99, 48 P. (2d) 1003, it was said:

"We are finally constrained to observe that the responsibility of weighing the recantation was imposed upon the trial court. Upon this tribunal

rested the duty of determining whether the recantation was true or false. It could not properly shift to another jury the responsibility with which, in the proper discharge of its duty, it was burdened (concurring opinion of Justice Cardozo in *People v. Shilitano*, 218 N. Y. 161, 112 N. E. 733, 739, L. R. A. 1916F, 1044). It is too firmly established to require the citation of any authorities that the trial court is vested with a wide discretion in passing upon motions for a new trial and that only when it is clearly made to appear that the trial court has capriciously or arbitrarily abused its discretion its action granting or denying such a motion will be disturbed."

See also *State* v. *Buton* (1927), 124 Kan. 509, 260 P. 634; *Blass* v. *People* (1926), 79 Colo. 555, 247 P. 177.

It is provided in Rule 1-9, 1943 Revision, that "The judge who presides at the trial of a cause shall, if available, rule on the motion for a new trial ▉ . . . ." The same practice exists in *coram nobis* proceedings. *Murphy* v. *Daly* (1934), 206 Ind. 179, 188 N. E. 769; *State ex rel. Witte* v. *Smith, Judge* (1942), 220 Ind. 536, 45 N. E. (2d) 204; *State ex rel. Meyer* v. *Youngblood* (1943), 221 Ind. 408, 48 N. E. (2d) 55. The reason is that he, better than anyone else, is in a position to determine factual questions which arise in connection with a request for a new trial. Particularly is this true where the inquiry is as to the credibility of persons whom he heard and saw on the witness stand under direct and cross examination. An appellate court does not have this advantage. This would be good reason, if there were no other, for limiting to the court in which the case is tried jurisdiction of *coram nobis* proceedings. When a trial judge, accepting and discharging this "solemn responsibility," has denied a new trial the function of the reviewing court is not to undertake the same task by appraising the

credibility of the conflicting testimony but to decide whether the trial judge could reasonably have reached the conclusion that the truth was told at the trial and not in the recanting affidavits. This was said in substance in *Garrett* v. *State* (1939), 216 Ind. 52, 22 N. E. (2d) 981, as follows:

> "Appellant's petition was addressed to the sound discretion of the trial court and the case comes to us with the presumption that the correct result was reached. The burden is upon the appellant to overthrow that presumption. We do not weigh conflicting evidence, nor will we disturb the discretionary act of a lower court unless a clear case of abuse is shown. *Quinn* v. *State* (1936), 209 Ind. 316, 198 N. E. 70."

This statement made in a *coram nobis* case is our conception of what ought to be and is the rule in Indiana.

The two cases upon which appellant most strongly relies are *Partlow* v. *State* (1924), 195 Ind. 164, 144 N. E. 661, 30 A. L. R. 1414 and *Davis* v. *State* (1928), 200 Ind. 88, 161 N. E. 375. They were decided when this court erroneously thought it had original jurisdiction of *coram nobis* proceedings and were later disapproved in *Stephenson* v. *State* (1933), 205 Ind. 141, 196, 179 N. E. 63, 186 N. E. 293, wherein the court held that such jurisdiction was solely in the court which tried the case. Partlow was here five times, three of them in an attempt to secure a new trial upon a showing that important witnesses had recanted. In the case above cited he was granted permission to raise the question in the court below by filing therein a motion for a new trial. The mandate added "that said court shall thereupon investigate and decide the truth or falsity of matters alleged in such motion and act thereon." This is exactly what should be done.

In the Davis case this court granted a petition for

writ of error *coram nobis*. From page 106 of the opinion (161 N. E. 382) it appears that the court assumed the truth of allegations that a material witness had committed perjury at the trial. It said that these allegations were not denied but added that if an issue had been made thereon the court "might have either determined the same or referred it to the lower court for trial and determination . . . ." If an assumption of perjury by an appellate court without jurisdiction to decide the fact of perjury could be considered a safe precedent, nevertheless, the case would be distinguishable in that, an issue was made and decided in the case at bar and is before us for review, not for redetermination upon the weight of the evidence.

From other jurisdictions appellant cites several cases, including *Bussey* v. *State* (1901), 69 Ark. 545, 64 S. W. 268. A similar case is *Dennis* v. *State* (1885), 103 Ind. 142, 2 N. E. 349. Both involved convictions for murder with death sentence. The gravity of the penalty evidently outweighed the judges' respect for the opinion of the trial judge for, disregarding his decision that the truth prevailed at the trial, they took it upon themselves to grant a new trial wherein the jury might search for the truth. If the cases may be sustained as correctly decided it can only be on the ground that the records therein disclosed an abuse of discretion. But they were not put on that ground. Later Arkansas cases seem to treat *Bussey* v. *State* as an exception to the general rule. See *Brown* v. *State* (1920), 143 Ark. 523, 222 S. W. 377, wherein there is reference to "the peculiar circumstances of that case;" *Little* v. *State* (1923), 161 Ark. 245, 255 S. W. 892 where the Bussey case is abstracted but the Shilitano case is quoted and followed; *Tucker* v. *State* (1928), 176 Ark. 1206, 2 S. W. (2d) 61, decided on the authority of the Little case; *Lind* v. *State* (1918),

137 Ark. 92, 207 S. W. 47; *Whittaker* v. *State* (1927), 173 Ark. 1172, 294 S. W. 397; and *Sutton* v. *State* (1939), 197 Ark. 686, 122 S. W. (2d) 617. In the last three the witness whose testimony was alleged to be perjured had made statements, but not affidavits, to that effect. The lack of the affidavit was thought to distinguish them from the Bussey case. These and other cases evidence the desire of the Arkansas court to avoid following without overruling a doubtful precedent.

Exceptions to a rule ought to be founded upon a basis more substantial than distrust by an appellate court of the considered opinion of a trial judge in a matter where he, because of his advantageous position, has a peculiar and primary responsibility. Accordingly we decline to treat *Dennis* v. *State* as an exception to the rule. It is unsound and ought not to be followed unless it can be rationalized as decided upon the theory that the trial judge abused his discretion. That even is doubtful.

The record before us presents no difficulty on that score. We have already indicated our opinion that from the evidence before the trial judge he might reasonably have inferred that the truth was told by Taylor and Hall during the trial. After they were sentenced for 10 to 25 years the penalty of perjury, 1 to 10 years, had no restraining influence. Their recanting affidavits are discredited by the deputy prosecutor's affidavit showing that the alleged coercion did not exist. The consistency of their testimony with their prior voluntary confessions is attested by the police officer. Their demeanor on the witness stand was within the knowledge of the judge. He had also seen and heard appellant during the trial attempt to explain away the incriminating direct and circumstantial evi-

dence produced by the State. It is not for us to override his considered judgment.

Judgment affirmed.

NOTE.—Reported in 60 N. E. (2d) 742.