## LYKINS *v.* STATE OF INDIANA

[No. 28,798. Filed October 30, 1952.]

*Joseph Pitman*, of Dunkirk, and *James W. Grimes*, of Portland, for appellant.

*J. Emmett McManamon*, Attorney General; *William T. McClain* and *John Ready O'Connor*, Deputy Attorneys General, for appellee.

BOBBITT, J.—This is an appeal from a judgment of the Jay Circuit Court denying appellant's petition for writ of error *coram nobis*.

The petition recites that appellant was arraigned in Jay Circuit Court on September 13, 1947, on a charge of murder in the first degree, to which charge he entered a plea of not guilty; that he was thereafter

tried before a jury and on February 28, 1948 was found guilty as charged, and on March 25, 1948 was sentenced to the Indiana State Prison for life. Said petition further alleges that appellant was of unsound mind, both at the time of the commission of the act on July 26, 1947 and during his trial; that he did not realize at the time of the commission of the crime, or at the time of his trial, that he was of unsound mind; that even though he had able and competent counsel, his unsoundness of mind was of such nature that his attorneys did not recognize it; and that because of the hidden and latent nature of the condition of his mind insanity was not pleaded as a defense, but that had he been possessed of all of his mental faculties he would have pleaded his unsoundness of mind at the time of the commission of the crime.

When insanity is relied upon as a defense it must be specially pleaded and the prosecuting attorney may reply to such plea by a general denial in writing. Section 9-1701, Burns' 1942 Replacement, Acts 1913, ch. 298, §1, p. 774; *Swain* v. *State* (1939), 215 Ind. 259, 264, 18 N. E. 2d 921; *Fritz* v. *State* (1912), 178 Ind. 463, 467, 99 N. E. 727; *Sage* v. *State* (1883), 91 Ind. 141.

Appellant admits that no special plea of insanity was entered at his trial and his sanity was not in issue, but relies upon a statement of this court in *Swain* v. *State, supra,* at page 265, (215 Ind.) in support of his petition for writ of error *coram nobis.* Said statement is as follows:

"It must be conceded, we think, that in a proper case *coram nobis* may afford a remedy for the relief of an insane person who is convicted without that fact having been brought to the attention of the trial court, where the circumstances surrounding the case disclose that the defendant was prevented

from having the issue raised and presented. Such is the intimation to be found in the case of *Sanders* v. *State* (1882), 85 Ind. 318."

Appellant contends that the circumstances surrounding his case prevented him from having the issue raised and presented at his trial because his insanity was latent and unknown to him or his attorneys at the trial, and by reason of this fact it could not have been specially pleaded. The record before us fails to disclose any circumstances surrounding appellant's case which would support the contention that he was prevented from having the issue of his sanity raised and presented at his trial.

In order to sustain his petition for a writ of error *coram nobis,* appellant was required to show by a fair preponderance of the evidence (1) that he was of unsound mind at the time he committed the offense with which he was charged; and (2) that he was prevented from having the issue raised and presented at his trial. *Sells* v. *State* (1952), 231 Ind. 137, 107 N. E. 2d 264.

Appellant introduced evidence in support of the allegations of his petition, and appellee introduced evidence controverting each and every allegation thereof. An examination of the record shows conflicting evidence on each material question. The rule that this court will not weigh conflicting evidence or determine the credibility of witnesses applies to hearings on petitions for writs of error *coram nobis.* *State* v. *Lindsey* (1952), 231 Ind. 126, 106 N. E. 2d 230; *Sells* v. *State* (1952), *supra; Abraham* v. *State* (1949), 228 Ind. 179, 91 N. E. 2d 358.

The question of whether appellant was of unsound mind at the time of the commission of the offense for

which he was tried and convicted was one of ■■ fact to be determined by the trial court, as was the question of whether or not he was prevented from having the issue of his sanity raised and presented at his trial. The burden of establishing these facts rested upon appellant.

An examination of the record discloses:

(1) The introduction at the *coram nobis* hearing of an affidavit by one of the defense attorneys at appellant's murder trial, Clarence E. Benadum, stating that in numerous conversations with appellant preceding said trial he could not, and did not, detect "mental symptoms of such a characteristic nature as to convince [him] affiant at that time that said Lykins was insane and of unsound mind." Affiant further states that appellant, while peculiar in his nature, did not show sufficient symptoms of insanity to warrant a positive inference that he was of unsound mind. The affidavit further states that affiant "entertained a thought" that appellant had a "more or less" hidden mental condition bordering upon unsoundness of mind, but when this thought was mentioned to appellant he "spurned it at every turn."

(2) Robert L. Smith, a witness for appellee, testified that he is a lawyer and assisted the State of Indiana in the murder trial of appellant, that he observed appellant during the trial and that appellant consulted frequently with his attorneys and appeared to be fully aware of every step taken, that he watched the progress of the trial with intense interest, at times smiling and at other times showing disappointment at some happening in the trial, and that his behavior was orderly and composed; and that he (Smith) had a conversation with appellant after he had been sentenced and appellant told him, in substance, that he was satisfied with the trial.

This witness identified state's exhibit 1, which was introduced in evidence and is a copy of verified showing by Mabel Lykins "why sentence and judgment should be withheld." This verified petition (exhibit 1) states that the affiant had reasonable grounds for believing that appellant at the time of the commission of the crime charged was in such confused state of mind that he did not comprehend or understand what he was doing, that he was examined during the trial by a psychiatrist of Indianapolis, Indiana, and that in the opinion of this psychiatrist appellant was suffering from a confused mental condition at the time of the commission of the alleged offense, that his actions following the killing of his wife were not those of a normal man, the affiant further states that these conditions "were discovered upon the trial of this cause, and that the confused mental condition of the defendant was not within the knowledge of this petitioner or other members of his family prior to the trial of said cause."

The witness, Robert L. Smith, further testified that in his opinion the petitioner was of sound mind during the trial and that although appellant had had two examinations, one before the trial by a recognized psychiatrist, there was no issue of insanity raised during the trial, nor was it called to the court's attention.

(3) Bessie Rogers, a witness for appellee, testified that she had known appellant for five years and that he came into the restaurant where she was employed at about four o'clock on the morning of July 26, 1947, that she served him sandwiches and coca cola, that he acted normal and that she noticed nothing unusual about him, and that in her opinion he was of sound mind at that time.

(4) John Tolland, a witness for appellee, testified that he was employed as a turnkey at the Jay County

jail on July 26, 1947, that he saw appellant on that date, and on every day thereafter while he was confined in jail and during his trial, that he had numerous conversations with appellant, and that he appeared good considering the crime he had committed. He testified further that he didn't see much difference in appellant's condition during the trial and the period he was confined in jail, and that in his opinion appellant was of sound mind during the trial.

(5) Roy Dull, a witness for the state, testified that he had known appellant about ten years and had worked with him "day after day" when their turns came on the same shift, that he saw appellant on the morning of July 26, 1947 and noticed nothing unusual about him, and that in his opinion he was of sound mind at that time.

(6) Elzie Wright, a witness for appellee, testified that he had been chief of police at Dunkirk for five years, and that he had known appellant for twelve or thirteen years, and had conversation with him three or four days prior to July 26, 1947, that he saw and conversed with appellant at the scene of the shooting on July 26, 1947, and again after he was confined in the county jail, that on both occasions he observed appellant's appearance, conduct and behavior, and that in his opinion appellant was of sound mind on July 26, 1947 and at the time of his trial.

While there was some evidence to show a history of insanity in appellant's family and peculiar actions on his part at various times, we do not deem the showing in this record sufficient to show such mental derangement as would excuse appellant in the commission of the crime for which he was convicted. This court in *Swain* v. *State* (1939), 215 Ind. 259, 18 N. E. 2d 921, *supra*, at page 268, said:

"It is not every slight aberration of the mind, nor every case of slight mental derangement, that will excuse a person for the commission of an act in violation of the law. Where there is mental capacity sufficient to fully comprehend the nature and consequences of the act, and unimpaired will power strong enough to master an impulse to commit crime, there is criminal responsibility. *Goodwin* v. *State* (1884), 96 Ind. 550."

Appellant has failed to sustain his burden of proof and it cannot be said, from an examination of the record, that he was denied the relief to which he was entitled under the evidence, and the judgment of the trial court was, therefore, not contrary to law and will be affirmed.

Judgment affirmed.

NOTE.—Reported in 108 N. E. 2d 270.