HILLMAN *v.* STATE OF INDIANA.

[No. 29,174. Filed December 14, 1954.]

*Cecil A. McCoy,* of Fort Wayne, for appellant.

*Edwin K. Steers,* Attorney General, and *Richard M. Givan,* Deputy Attorney General, for appellee.

GILKISON, J.—On September 10, 1953, appellant was charged in the Allen Circuit Court with the crime of rape of a girl eleven years of age. He had been arrested on the 27th of August, 1953, and held in jail continuously thereafter until and after he was so charged. On September 14, 1953, the court appointed a pauper attorney to serve appellant. A plea of not guilty was entered and on October 7th, 1953, appellant was tried by the court, without mention of a jury. He was found guilty and sentenced to the Indiana

State Prison for life on the same date. There is no affirmative showing in the record that appellant ever waived his right to a jury trial.

On December 1, 1953, appellant filed his verified petition for *coram nobis,* in the Allen Circuit Court among other things averring:

(1) That the pauper attorney appointed to serve him rendered only perfunctory service to appellant as follows: (a) That he did not ask for a stenographer to report the proceedings in the trial and for that reason no bill of exceptions could be had, upon which to base an appeal, nor could a motion for a new trial, based upon error in the trial procedure be prepared or filed. (b) That the pauper attorney knew appellant had signed a statement produced by fear from beatings he had received from the police and the threat of further beatings if he failed to sign the statement, but allowed the statement to be offered in evidence without objection and without offering any evidence in rebuttal thereof, and refused to permit appellant to testify in his own behalf on that matter, or even to deny that he had committed the crime with which he was charged or to testify at all. (c) That he rested his defense without putting in any defense evidence whatever. (d) That he made no argument or statement to the court whatever in appellant's defense. (e) That he refused to interview, have subpoenaed, or offer as witnesses three persons who were with appellant at the time the alleged crime was committed, though appellant gave him their names and the locality of their residence, and they were all easily available.

(2) That after his arrest he was questioned by police concerning the alleged crime. When he denied any knowledge concerning it, he was accused of lying

and one of the policemen struck and beat him with great violence. Then they told him that another policeman who was present would be still rougher on him. That it was because of this treatment and threat that he signed the statement the police had prepared. He was then taken to the jail at Huntington, Indiana, where he suffered greatly from the beating he had received.

(3)   That appellant never at any time waived his right to a jury trial. That he did not know he had a right to object to a trial without a jury, and he never at any time authorized his attorney, the judge or anyone else to waive a jury trial of the cause.

(4)   That appellant was poor, ignorant of the law and of his rights, and that he depended wholly upon the attorney appointed for him by the judge. That his representation by said attorney was less than *pro forma*. That the prosecuting witness was so questioned as to be practically instructed what to testify.

That within less than three hours after his trial began he was on his way to the State Prison where he has been since.

The state put the cause at issue by general denial. Upon trial of the *coram nobis* proceeding on January 19, 1954, there was a finding and judgment for the state.

There was no argument at all, and there was no court reporter.

Appellant testified fully in support of the several charges noted.

The policemen denied that they had beaten, or threatened appellant, but did not deny continuous and prolonged questioning.

The pauper attorney testified that he was unable

to find the witnesses appellant told him about, he did not testify that he ever looked for them. So far as shown by the evidence he did not have a subpoena issued for these witnesses and placed in the hands of the Sheriff for service and return, and thus have the aid of a trained officer in searching for them, or thus to show some diligence upon his part to support a motion for continuance, because of the absence of the witnesses. He did not ask for a continuance of the cause because of the absence of these witnesses, in order that he might make a further search for them. It appears that these were to be alibi witnesses, but the pauper attorney gave no notice of his intention to offer evidence of alibi as required by statute, §§9-1631, 9-1632, 9-1633, Burns' 1942 Repl. This absence of effort on the part of the pauper attorney indicates that he never at any time intended to use the alibi evidence even if it were available. The pauper attorney as a witness, did not pretend that he made any opening statement for the defense to the court, nor that he ever cross-examined any of the state's witnessees, nor made any objection to any question put to any witness by the state, either as to substance or form. He did not claim that he produced or attempted to produce any evidence whatever for his client, nor that he made any opening statement or closing argument for him. In fact, it appears from his evidence, that he never was heard to say one word from the beginning to and including the close of the trial proceedings. What then does he claim to have done?

(1) He claims he told his client that he had a right to a jury trial, but his client said he was innocent and did not want a jury. On this subject the lawyer seems to have taken his client's advice, instead of giving advice to his client. He did not ask for a jury.

(2) He said he told appellant he had a right to take the witness chair, and appellant said he didn't want to. Again the lawyer seems to have taken advice from his client, instead of giving him advice. He did not put appellant on the witness-stand.

Notwithstanding the fact that an able, regularly employed court reporter was available, he did not ask for the service of a reporter in the case and the judge did not require such service.

The attorney's reason for not asking for or having a reporter is:

"I thought that was one of the easiest cases that I was going to win, because Thomas Hillman never was there and he never signed a statement and, under those circumstances I thought it would be impossible to get a conviction."

Such, apparently, were the thoughts of appellant's attorney when his client was being tried for a heinous crime, where conviction would cost him his liberty for life. He relied wholly on his hopes of the weakness of the state's evidence, and did nothing whatever for his client.

Another peculiarity of the case is that the trial was had in the court's chambers, and not in the court-room, notwithstanding the constitutional provision: "All courts shall be open; . . ." Art. 1, Sec. 12, Indiana Constitution.

We have heretofore said:

"These provisions of the Constitution are a part of the fundamental law of the state, declared by the people themselves acting in their sovereign capacity. *Ellingham* v. *Dye* (1913), 178 Ind. 336. 99 N. E. 1, Am. Cas. 1915 C 200. As such they are entitled to strict construction. *Lafayette, Muncie and Bloomington R. R. Co.* v. *Geiger* (1870), 34 Ind. 185. It has been said that the lan-

guage of each provision of the Constitution is to be considered as though every word had been hammered into place. *State ex rel. Hovey* v. *Noble* (1888), 118 Ind. 350, 21 N. E. 244." *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 101, 26 N. E. 2d 399.

The Constitution of Indiana provides:

"In all criminal prosecutions, the accused shall have the right . . . ; to be heard by himself and counsel; . . ." Art. 1, Sec. 13.

With respect to a situation such as we have in this case, this court has said:

"As pointed out in the beginning, the United States Supreme Court has held that, under the Federal Constitution, there can be no valid trial of a criminal case unless the defendant is *adequately* defended by counsel, and that a judgment rendered under such circumstances is void. This court has consistently held that, under the Constitution of Indiana, there can be no valid judgment against a defendant in a criminal case unless he has been offered, and, if so desired, provided with, *adequate* counsel." (Our italics.) *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 510, 29 N. E. 2d 405; *Sweet* v. *State* (1954), 233 Ind. 160, 164, 117 N. E. 2d 745. See also *Wilson* v. *State* (1943), 222 Ind. 63, 79, 51 N. E. 2d 848; *State ex rel. White* v. *Hilgeman, Judge* (1941), 218 Ind. 572, 578, 34 N. E. 2d 129; *Sanchez* v. *State* (1927), 199 Ind. 235, 245, 157 N. E. 1; *Castro* v. *State* (1925), 196 Ind. 385, 391, 147 N. E. 321.

In *Castro* v. *State*, 196 Ind. 385, *supra*, at page 391, this court said:

"And mere perfunctory action by an attorney assuming to represent one accused of crime which falls short of presenting the evidence favorable to him and invoking the rules of law intended to prevent conviction for an offense of which the accused

is innocent, or the imposition of a penalty more severe than is deserved, should not be tolerated."

This statement is quoted with approval by this court in *Wilson* v. *State* (1943), 222 Ind. 63, at page 81, and definitely is the applicable law in Indiana in the instant case.

The record indicates that the appellant is a poor, uneducated and very ignorant young negro. Apparently he was without friends' or relatives' assistance. When prosecuted, his defense, under our Constitution and laws, became a solemn duty of the court in which the prosecution was pending. Under our laws the court must perform its duties with reference to such defense in the utmost good faith, by the appointment of a competent attorney. It is not sufficient just to appoint one who has been admitted to the bar, but it must be an attorney who not only has the ability to defend but one who has a determined will to defend, and "Never to reject, for any consideration personal to himself, the cause of the defenseless or oppressed." Burns' 1946 Repl., Sec. 4-3608, Cl. Eighth. The United States Supreme Court has ably said:

" . . . Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision. And nowhere is this service deemed more honorable than in case of appointment to represent an accused too poor to hire a lawyer, even though the accused may be a member of an unpopular or hated group, or may be charged with an offense which is peculiarly abhorrent." *Von Moltke* v. *Gillies* (1948), 332 U. S. 708, 725, 68 S. Ct. 316, 324, 92 L. Ed. 309, 322; *Glasser* v. *United States* (1942), 315 U. S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680, 699.

The service rendered by the pauper attorney for

his client in the instant case does not indicate that he was competent to defend one charged with crime. The services rendered, if any, were wholly inadequate. Appellant could not have been worse off if he had had no attorney at all. The appointment of such an incompetent attorney, and his failure to render any actual service to his client, falls far short of our constitutional requirement, that the defendant has a right "to be heard by himself and counsel." It has the elements of an ex parte trial. *Hendryx* v. *State* (1891), 130 Ind. 265, 269, 29 N. E. 1131. Such a trial was envisioned by this court one hundred years ago, when it said:

> ". . . It is not to be thought of, in a civilized community, for a moment, that any citizen put in jeopardy of life or liberty, should be debarred of counsel because he was too poor to employ such aid. No court could be respected, or respect itself, to sit and hear such a trial. The defense of the poor, in such cases is a duty resting somewhere, which will be at once conceded as essential to the accused, to the court and to the public." *Webb* v. *Baird* (1854), 6 Ind. 13, 18.

The trial of appellant attacked by this *coram nobis* petition does not comport with the due course of law provision of the Indiana Constitution §12, Art. 1, or the due process of law provision of the 14th Amendment of the United States Constitution.

The judgment of the Allen Circuit Court is reversed with instructions to enter a finding and judgment for the plaintiff, granting him a new trial, and further proceedings agreeable with this opinion.

Bobbitt, J., and Draper, J., dissenting.

Emmert, J., concurring with opinion.

Flanagan, J., concurring.

## Concurring Opinion

EMMERT, J.—I concur in the result reached in the majority opinion by the Chief Justice. Appellant was a Negro, twenty-eight years old, and stood charged with a sexual offense for which the penalty was life imprisonment. He was "ignorant of the law and of his rights both before and during the trial of his cause." The petition for the writ of error *coram nobis* charged "that the defense of his cause by said attorney was less even than *pro forma*." An examination of the entire record discloses his pauper counsel failed to give " 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense." Canon 15, Canons of Professional Ethics.

Appellant was tried by the court without a jury. There was conflicting evidence as to whether or not appellant waived his rights to a trial by jury, and under such circumstances we will not disturb the finding of the trial court on this issue. The same rule applies on the issue that the confession was coerced by physical force.

However, there is no conflict in the evidence that there was no official court reporter present to report the evidence at the trial which resulted in his conviction. Appellant's pauper counsel stated the reason he did not insist upon this right was that "I thought that

was one of the easiest cases that I was going to win, because Thomas Hillman never was there and he never signed a statement and, under those circumstances, I thought it would be impossible to get a conviction."

Appellant's counsel made no investigation other than talking to his client and attempting to get one witness who he was unable to locate. Appellant until the time of trial denied signing a confession, which he had done. Appellant, as revealed by this record, just escaped being stupid. He had never been convicted before for any offense, and when he was arrested he was intoxicated, at least to some degree. One of the police officers testifying for the state said, "we put Thomas Hillman back into the car and, like he said, I could smell alcoholic beverages on his breath, but *he didn't appear to be too highly intoxicated*." (Italics supplied.) He was then taken to be confronted by the prosecutrix, who refused to identify him, then to his rooming house where he changed clothes, then back to the home of the prosecutrix, who, after she had talked to the police, then confronted him and identified him. Following that he was taken to police headquarters, where under questioning he signed the confession the same afternoon.

A careful lawyer would have double-checked the story of appellant. See *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389. The transcript discloses that the prosecuting attorney, in compliance with the criminal code, endorsed the names of six witnesses on the back of the affidavit. None of these were ever called or interviewed by appellant's counsel, although as a matter of law he knew the state had listed them as witnesses against his client. Even a casual investigation of the evidence the police officers were prepared

to give would have disclosed that a confession had been signed.

Under §9-2301, Burns' 1942 Replacement, the appellant had a right to appeal from his conviction to this court as a matter of right, and regardless of his guilt or innocence. Under the rule laid down in *Burton* v. *State* (1953), 232 Ind. 246, 111 N. E. 2d 892, the testimony of the prosecutrix required corroboration. Appellant's counsel made no attempt to ascertain what her testimony would be, and without a bill of exceptions containing the evidence he would not have been in a position to present a question of corroboration to this court on appeal. Failure to have the testimony reported in effect denied appellant of a right to appeal. Denial of a right to appeal is denial of equal protection under the law to which he is entitled. *Dowd, Warden* v. *U. S. ex rel. Cook* (1951), 340 U. S. 206, 210, 71 S. Ct. 262, 95 L. Ed. 215, 19 A. L. R. 2d 784.[1]

Inability to obtain a bill of exceptions is cause for a new trial. *Cook* v. *State* (1951), 231 Ind. 695, 97 N. E. 2d 625; *Cook* v. *State* (1953), 231 Ind. 702, 110 N. E. 2d 749, and authorities therein cited. Earlier cases to the contrary have been overruled by these authorities.

I concur in the reversal of the judgment.

### DISSENTING OPINION IN WHICH DRAPER, JUDGE, CONCURS

BOBBITT, J.—I dissent from the majority opinion and decision for the following reasons:

*First:* This is an appeal from a judgment of the trial court denying appellant's petition for writ of error *coram nobis* by which proceeding appellant at-

---

1. "The Fourteenth Amendment precludes Indiana from keeping respondent imprisoned if it persists in depriving him of the type of appeal generally afforded those convicted of crime." *Dowd, Warden* v. *U. S. ex rel. Cook* (1951), 340 U. S. 206, 210, 71 S. Ct. 262, 95 L. Ed. 215, 19 A. L. R. 2d 784.

tempted to show that he did not have a fair trial when he was convicted for the commission of rape upon a female child 11 years of age. No appeal was taken from the judgment in that case. The sole error assigned here is that the decision is contrary to law "in that the entire evidence adduced at the hearing was such as should have sustained a finding and judgment for appellant."

The judgment attacked by appellant's petition for writ of error *coram nobis* is valid on its face and the presumption is that it was procured by due process of law. The burden was upon appellant to overcome this presumption by a fair preponderance of the evidence in order to maintain his petition. *State* v. *Lindsey; State* v. *Carroll* (1952), 231 Ind. 126, 136, 106 N. E. 2d 230; *Sells* v. *State* (1952), 231 Ind. 137, 142, 107 N. E. 2d 264; *Souerdike* v. *State* (1952), 231 Ind. 204, 206, 108 N. E. 2d 136. He failed to sustain that burden. ·

*Second:* If the evidence was such as should have compelled a finding and judgment for appellant, the finding is contrary to law. However, the judgment herein should be set aside only if the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion. *Burns* v. *State* (1953), 231 Ind. 563, 570, 108 N. E. 2d 626, 345 U. S. 958, 97 L. Ed. 1379, 73 S. Ct. 943; *Souerdike* v. *State* (1952), 231 Ind. 204, 206, 108 N. E. 2d 136, *supra; Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669.

An examination of the record discloses a conflict in the evidence on all the material questions raised in appellant's brief.

The appellant testified that he was struck and beaten by the police and that the confession which was intro-

duced on his trial was obtained by threats and duress. This was denied, under oath, by three police detectives who questioned appellant at the time of, and after, his arrest.

Appellant further testified that he gave his attorney the names and addresses of several witnesses who would testify in his behalf. The attorney testified that appellant gave him the name of only one witness but did not know his address, that he made an effort to locate the witness but was unable to find him.

Appellant further testified that he was not advised of his right to a trial by jury at any time after his arrest. His attorney testified that on September 14, 1953, he explained to appellant his constitutional rights and asked him if he wanted a jury trial, and appellant replied that he did not; that again, on September 19, he told appellant that he could have the option of trying the matter before the court or jury, and that he had the right, if he wanted it, to have a jury called. That on a subsequent time, on September 19, appellant said he didn't want a jury. That he talked with appellant at the county jail on Saturday afternoon in the conference room and discussed with him the right to a trial by jury. That he told him he could have a jury if he so requested, and he said he did not want a jury because he was innocent of the matter.

Appellant's attorney further testified; "On October 7, 1953, I told this defendant that he was going on trial, what the charge was, and that it was for an offense for which he might be given a sentence of life imprisonment. He understood that. I talked with him and so told him. . . . On October 7, 1953, I again brought up the subject of a jury with him. I told him he could still have a trial by jury if he so requested.

"Q. He fully understood that?

"A. Yes, to which Mr. Thomas A. Hillman said he was not guilty of the charge in the affidavit.

"Q. And, therefore, he didn't want a jury because he was not guilty?

"A. That is correct."

This court has consistently and without exception held that when the evidence is in conflict on the material allegations of the petition for writ of error *coram nobis,* this court will not weigh the evidence or determine the credibility of witnesses. *Burns* v. *State* (1953), 231 Ind. 563, 108 N. E. 2d 626, *supra; Dillon* v. *State* (1952), 231 Ind. 396, 108 N. E. 2d 881; *Lykins* v. *State* (1952), 231 Ind. 258, 108 N. E. 2d 270; *Souerdike* v. *State* (1952), 231 Ind. 204, 108 N. E. 2d 136, *supra; Sells* v. *State* (1952), 231 Ind. 137, 107 N. E. 2d 264, *supra; State* v. *Lindsey; State* v. *Carroll* (1952), 231 Ind. 126, 106 N. E. 2d 230, *supra; Abraham* v. *State* (1950), 228 Ind. 179, 91 N. E. 2d 358; *Thompson* v. *State* (1947), 225 Ind. 78, 72 N. E. 2d 744, 331 U. S. 842, 91 L. Ed. 1853, 67 S. Ct. 1525; *Bolton* v. *State* (1945), 223 Ind. 308, 60 N. E. 2d 742, 158 A. L. R. 1057; *Sessler* v. *State* (1944), 222 Ind. 608, 56 N. E. 2d 851; *Garrett* v. *State* (1939), 216 Ind. 52, 22 N. E. 2d 981; *Power* v. *State* (1936), 210 Ind. 435, 4 N. E. 2d 178; *Quinn* v. *State* (1936), 209 Ind. 316, 198 N. E. 70.

Nor will the decision of the trial court be disturbed if there is evidence of probative value to sustain it. *Burns* v. *State* (1953), 231 Ind. 563, 565, 108 N. E. 2d 626, *supra.*

It is evident from the summary of evidence and direct testimony set out hereinabove that there is substantial evidence in the record to support the finding and judgment of the trial court. We have many times affirmed on much less.

*Third:* The result reached by the majority could be obtained only by (1) weighing the evidence and determining the credibility of the witnesses; and (2) by searching the record in an effort to find reversible errors. Both are directly contrary and repugnant to rules which are as old and as well established as the court itself. That this court will not search the record for causes on which to reverse a judgment is as well settled and as sound as the rule that we will not weigh the evidence.

The decision of the majority that appellant's trial does not comport with the due course of law provision of the Indiana Constitution, §12, Art. 1, or the due process of law provision of the 14th Amendment of the United States Constitution, is apparently based upon two reasons: (1) That appellant was not represented by competent counsel; and (2) that the trial was held in the judge's chambers and not in the courtroom. In my opinion the evidence is not such as to lead only and inescapably to the conclusion of the majority that appellant's constitutional rights were violated because of the incompetency of his counsel.

The question of holding the trial in the judge's chambers instead of in the courtroom is neither mentioned nor discussed in the argument section of appellant's brief as required by Rule 2-17(e) and (f) of this court and it must, therefore, be deemed waived. *Rudd* v. *State* (1952), 231 Ind. 105, 113, 107 N. E. 2d 168.

I will now consider the points advanced by the appellant in support of his assignment of errors.

*Fourth:* Appellant discusses four questions in the argument section of his brief: (a) Why the evidence was such as should have sustained a finding and judgment for appellant; (b) Alleged inadequacy of counsel

furnished him for his trial by the court; (c) The alleged failure of appellant to waive his right to trial by jury; and (d) The failure of his counsel to require a court reporter at the original trial.

(a) As to this question appellant attempts to sustain his assigned error by asserting that evidence favorable to him is uncontroverted. As has already been pointed out in this opinion, the record conclusively disproves such assertion.

(b) It appears from the argument section of appellant's brief that the charge of inadequacy of counsel is based upon the assertion that his court-appointed counsel failed or refused to secure the attendance of appellant's witnesses at the trial. As was stated above, appellant's attorney testified at the *coram nobis* hearing that the appellant gave him the name of only one witness but did not know his address or how, when, or where he could be located.

In addition to the testimony of appellant's trial counsel hereinabove set out, he testified further as follows:

"I discussed with him the matter of a signed confession at this conference on September 19th. I asked if he signed a statement to the police officers, and he answered 'No.' I did not know that the police officers had obtained a statement from him. I did not know from him there was a statement signed by him. I asked him if at anytime he had signed a statement. He said he did not. I said, 'Did you sign any papers concerning the facts contained in this affidavit?' He said he did not. I first learned about this exhibit that was introduced in evidence at the time of the trial on October 7, 1953, by Sergeant Frank King. The day of the trial was the first intimation I had that he had signed a statement. I read it that day. I talked with the petitioner about it. I asked if this was his statement, if the facts in here were true and if he signed it—to which he said it was.

He did not say anything to me about being abused by any member of the Fort Wayne Detective Bureau. That was on October 7, 1953, or anytime prior to that. October 7, 1953, he did not make any statements as to how his signature appeared on this statement. I asked him if it was his statement, and if the facts were true, and if he signed it; and he answered all that in the affirmative. He did not say to me at that time why he signed it. He said, 'That's my statement, that's how it happened, and that's my signature.'

"Q. How did you on that day reconcile that statement, signed confession, confessing the alleged charge, when he had repeatedly told you he was innocent?

"A. I asked Thomas Hillman whether he had signed the statement, and he said 'Yes.' I said, 'You told me you never signed any statement.' He said, 'That's all right, I signed it,' and that's all he said. (end of answer). He did not say anything at anytime about George Nine or anyone else abusing him. I never heard anything of any abuse in this case until just recently. There was nothing said about it on the day of trial. On September 28, 1953, I entered a plea of not guilty. I did not change the plea on that day. Nothing was said on that day about him not taking the witness stand. The only thing I asked him was whether he wanted to take the witness stand. He said he did not want to take the witness stand."

(c) Appellant's trial counsel testified that on three different occasions he advised appellant that he was entitled to a trial by jury, and that appellant replied that he did not want a jury trial. There appears in the Order Book an entry on October 7, 1953, as follows:

"Comes now the State of Indiana, by John G. Reiber, Prosecuting Attorney, and comes now the defendant, Thomas A. Hillman, in person and by counsel, Frank Celarek, and this cause now being at issue, the same is submitted to the Court for trial, ..."

The statute implementing the constitutional provision[1] for trial by jury is as follows:

"The defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. All other trials must be by jury." Acts 1905, ch. 169, §258, p. 584, being §9-1803, Burns' 1942 Replacement.

It is evident from the record that appellant, being present in court with his attorney on the day set for trial, knowingly and voluntarily submitted himself to the court for trial without a jury. By thus freely and understandingly submitting his trial to the court on the evidence, he waived his constitutional right to a trial by jury. *Murphy* v. *State* (1884), 97 Ind. 579; Ewbank's Criminal Law, 2d Ed., §555, pp. 371, 372.

(d) There is no evidence in the record before us that appellant ever attempted or contemplated an appeal from his conviction in the original case, or could have been in any way prejudiced by the failure to have a court reporter take down the testimony at his trial.

The absence of a court reporter does not necessarily preclude the making of a bill of exceptions for the purpose of an appeal. The substance of the testimony given may be set forth in lieu of a bill of exceptions in question and answer form. *McDonald* v. *State* (1954), 233 Ind. 441, 118 N. E. 2d 891.

The non-attendance of a court reporter to take down the testimony at his original trial was in no way prejudicial to the appellant who never appealed or attempted to appeal that case.

*Fifth:* I have been unable to find any evidence in the record pertaining to alibi witnesses, and if, as it appears, the appellant never informed his attorney

1. Section 13, Article 1, Constitution of Indiana.

of the existence of any such, the fact the attorney failed to give notice of alibi as required by statute cannot be considered as evidence that he was incompetent.

The record in this case does not approach a showing of a set of circumstances such as were present in *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848, and in my opinion the reasons for reversal in that case have no application whatever to the case at bar.

Is this court to sit in judgment upon every defense lawyer in a criminal case and pronounce him incompetent because he failed to produce witnesses in behalf of the defendant, even though it appears that none were available?

Is a lawyer presumed to be condemned as incompetent because he failed to make an opening statement, or cross-examine the state witnesses, or make objections to questions propounded by the prosecuting attorney regardless of how much damage he might do to his own client's cause by venturing to do so?

Is this court going to castigate a lawyer as being incompetent because he did not insist upon a jury trial for his client when the client told him on more than one occasion that he did not want a jury trial, and did so with full knowledge of his right thereto?

Is it conclusive proof of incompetency when a lawyer, after advising his client that he had a right to take the witness stand and testify in his own behalf and the client refuses to do so, does not attempt to compel or coerce such client to take the witness stand and testify?

It is common knowledge among lawyers that there are many instances in which, in the defense of a person charged with crime, the most capable, experienced and seasoned defense counsel would purposely, for valid

reasons apparent to him, pursue a similar course and do and refrain from doing the very things which have in the opinion of the majority rendered appellant's trial counsel incompetent in this case.

It is presumptious on the part of this court to "second guess" the judgment of an attorney in deciding the policy and strategy which should best be followed in conducting the defense of persons charged with crime. We are not competent to do so, nor is it a part of our function.

A pronouncement by this court that appellant's counsel was incompetent and inept and by his acts, or failures, prevented appellant from having a fair and impartial trial, in view of the entire record before us, can be based only upon speculation, conjecture and "second guessing." This is not sufficient.

For the reasons above stated, I would affirm the judgment of the trial court.

Draper, J., concurs.

Note.—Reported in 123 N. E. (2d) 180.

