## SHACK v. STATE OF INDIANA.

[No. 30,467. Consolidated with No. 30,730. Filed November 14, 1967.]

*Charles G. Castor,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *Murray West,* Deputy Attorney General, for appellee.

LEWIS, J.—The appellant was indicted by the Grand Jury of Marion County, Indiana, for the offense of Murder in the First Degree. Shack entered a plea of not guilty and after trial by jury a verdict was renderd finding him guilty of Murder in the First Degree and he was sentenced to suffer death.

After the indictment was returned by the Grand Jury, the the Court appointed an attorney, one James Nedeff, to represent Varderman Shack. After the verdict was rendered and judgment entered, Mr. Nedeff prepared and filed a motion for new trial. The motion for new trial was overruled.

Shack then prayed an appeal to the Supreme Court of Indiana as a pauper and the Trial Court granted the request for appeal as a pauper and appointed Charles G. Castor, an attorney, to represent Shack in his appeal to the Supreme Court. After the appointment of Mr. Castor as appellate attorney for Mr. Shack, and after the transcript of the trial proceedings had been prepared, Mr. Castor filed a petition for permission to file a belated motion for new trial, which petition, omitting the formal parts, reads as follows:

"Comes now the defendant, Varderman Shack, and petitions the court for permission to file a belated motion for new trial pursuant to Rule 2-40 and 2-40 (a) of the Supreme Court of Indiana, and in support thereof, shows the Court as follows:

1. The defendant was charged herein with the crime of first-degree murder.

2. The defendant was represented at his trial on June 3, 1963 by James Nedeff, Public Defender, and on the 5th day of June, 1963, the defendant was convicted by jury with a recommendation that the defendant suffer death.

3. On July 3, 1964, a motion for new trial was filed for the defendant by the Public Defender, James Nedeff.

4. Thereafter, defendant filed petition to appeal as a pauper, which the Court granted on August 27, 1963, and appointed Charles G. Castor, attorney, of Indianapolis, Indiana, to represent the defendant in his appeal.

5. Defendant's attorney, Charles G. Castor, had no knowledge of the proceedings in this cause prior to his appointment as attorney for the defendant.

6. Defendant, Varderman Shack, is entitled to a new trial because of the following:

(a) The defendant was not given a fair and impartial trial as guaranteed by the Constitution of the State of Indiana, Art. I, Sec. 13, inasmuch as his counsel was incompetent in his representation of the defendant for and during the trial of the defendant in this cause.

(b) The evidence was insufficient to support the finding of the jury.

(c) The verdict of the jury was contrary to law.

(d) The jury failed to give adequate time to its deliberation in this cause, deliberating only thirty minutes to find the defendant guilty on a capital offense and recommended the death penalty.

7. A copy of the proposed Motion for New Trial, the permission to file which is requested by this petition, is attached hereto, marked Exhibit "1," and made a part hereof by reference, which specifically sets forth the points alleged as to grounds for new trial.

8. The cause for new trial, namely, incompetency of counsel, was first discovered by the defendant on or about the 7th day of September, 1964, during a conference with his attorney at the Indiana State Penitentiary at Michigan City, Indiana.

9. The cause relied upon for a new trial in this petition is that the defendant was not afforded his Constitutional Rights to competent counsel to assist him at all stages of the proceedings herein before and during the trial of his

case as hereinbefore alleged, and more specifically as follows:

(a) The defendant was charged with the crime of first-degree murder, a crime which carries a penalty of the suffering of death, the penalty which the defendant received. Being a poor person, the defendant was represented by the Public Defender, James Nedeff, attorney, who had never represented a defendant in a capital case, and whose sole jury experience consisted of one jury trial prior to the trial of the defendant.

(b) That because of the gravity of the offense, the defendant was entitled to the appointment of counsel with experience in trial of jury cases, and also an attorney experienced in trial of murder cases.

(c) That defendant is an unskilled and uneducated person regarding the practice of law, having attended only to the fourth grade of schooling, and can read and write only to a limited extent, and prior to the trial of this cause, had had no experience with attorneys, and was unacquainted with the various skills which attorneys possess.

(d) At the time of the alleged offense, defendant received an injury to his throat, and as a result thereof, was unable to talk until approximately two weeks before his trial. That his court-appointed attorney, James Nedeff, well knew this, but failed to file a motion for continuance of the trial to enable him to adequately confer with his attorney to prepare for the trial of this cause.

(e) That James Nedeff, his attorney, did not adequately explain to him the penalties which he could receive by virtue of the offense charged, and failed to adequately advise the defendant as to the penalties contained in the charge of first-degree murder as contrasted with the penalties contained in second-degree murder.

(f) That the [sic] the trial of the defendant, the defendant there requested his attorney to ask questions of state's witnesses which his attorney, James Nedeff, failed to do.

(g) That the defendant furnished his attorney, James Nedeff, with names of witnesses to testify favorably in his behalf, which witnesses his attorney failed to subpoena at his trial.

(h) That the defendant furnished his attorney, James Nedeff, with names of witnesses to testify as to his character, which witnesses his attorney failed to subpoena,

and the defendant was, for all practical purposes, the only witness in his behalf.

(i) That his attorney, James Nedeff, did not spend sufficient time in preparing for the trial of this cause.

(j) That his attorney, James Nedeff, did not tender any instructions to the Court for reading to the jury.

(k) That there elapsed only a lunch hour from the conclusion of the evidence in this case until argument and instructions, and that attorney, James Nedeff, failed to request additional time to prepare and submit instructions to the Court for reading to the jury.

(l) That the jury in this case deliberated approximately thirty minutes on a capital offense case recommending the death penalty for the defendant, which, in itself, shows a lack of preparation of a defense for the defendant by his attorney, James Nedeff.

10. The incompetency of James Nedeff, the attorney for the defendant at his trial, despite the exercise of due diligence, could not be discovered until on or about the 7th day of September, 1964, as the defendant had never conferred with other attorneys regarding his case and was ignorant as to the abilities and responsibilities of attorneys in the trial of cases and representation of clients.

11. That the motion for new trial previously filed in this cause was filed by James Nedeff, Public Defender, as attorney for the defendant, and said attorney could not be expected to include as a ground for new trial, his own incompetency.

WHEREFORE, Varderman Shack, defendant, prays that the Court enter an order allowing him to file his belated motion for new trial, and for all other relief proper in the premises."

The substance of the motion for new trial itself is contained in the petition, *supra*.

In order to have a complete understanding of the petition for permission to file a belated motion, the affidavits of Varderman Shack and James Nedeff, which were attached to such motion for new trial, are incorporated herein.

The affidavit of Varderman Shack, omitting the formal parts, reads as follows:

"Varderman Shack, being duly sworn upon his oath, deposes and says:

1. That he is the defendant herein.

2. That he was not afforded his Constitutional Rights as guaranteed by Article I, Section 13 of the Constitution of the State of Indiana, as he was not adequately represented by counsel prior to and during his trial, and that counsel appointed to represent him by the Court, James Nedeff, attorney, was incompetent in the following manner:

(a) The defendant was charged with the crime of first-degree murder, a crime which carries a penalty of the suffering of death, the penalty which the defendant received. Being a poor person, the defendant was represented by the Public Defender, James Nedeff, attorney, who had never represented a defendant in a capital case, and whose sole jury experience consisted of one jury trial prior to the trial of the defendant.

(b) That because of the gravity of the offense, the defendant was entitled to the appointment of counsel with experience in trial of jury cases, and also an attorney experienced in trial of murder cases.

(c) That defendant is an unskilled and uneducated person regarding the practice of law, having attended only to the fourth grade of schooling, and can read and write only to a limited extent, and prior to the trial of this cause, had had no experience with attorneys, and was unacquainted with the various skills which attorneys possess.

(d) At the time of the alleged offense, defendant received an injury to his throat, and as a result thereof, was unable to talk until approximately two weeks before his trial. That his court-appointed attorney, James Nedeff, well knew this, but failed to file a motion for continuance of the trial to enable him to adequately confer with his attorney to prepare for the trial of this cause.

(e) That James Nedeff, his attorney, did not adequately explain to him the penalties which he could receive by virtue of the offense charged, and failed to adequately advise the defendant as to the penalties contained in the charge of first-degree murder as contrasted with the penalties contained in second-degree murder.

(f) That at the trial of the defendant, the defendant there requested his attorney to ask questions of state's witnesses which his attorney, James Nedeff, failed to do.

(g) That the defendant furnished the attorney, James Nedeff, with names of witnesses to testify favorably in his behalf, which witnesses his attorney failed to subpoena at his trial.

(h) That the defendant furnished the attorney, James Nedeff, with names of witnesses to testify as to his character, which witnesses his attorney failed to subpoena, and the defendant, was, for all practical purposes, the only witness in his behalf.

(i) That his attorney, James Nedeff, did not spend sufficient time in preparing for the trial of this cause.

(j) That his attorney, James Nedeff, did not tender any instructions to the Court for reading to the jury.

(k) That there elapsed only a lunch hour from the conclusion of the evidence in this case until argument and instructions, and that attorney, James Nedeff, failed to request additional time to prepare and submit instructions to the Court for reading to the jury.

(l) That the jury in this case deliberated approximately thirty minutes on a capital offense case recommending the death penalty for the defendant, which, in itself, shows a lack of preparation of a defense for the defendant by his attorney, James Nedeff."

The affidavit of James Nedeff, omitting the formal parts, reads as follows:

"James Nedeff, being duly sworn upon his oath, deposes and says:

1. That he is a practicing attorney in Marion County, in the State of Indiana, and at the present time, is 38 years old.

2. That he received his law degree from Indiana University School of Law, Indianapolis Division, in 1956, and commenced practice in the year 1957, and has continued his practice to the date of this affidavit.

3. That his practice consists primarily of 95% civil matters and 5% criminal matters.

4. During the year 1959, he was a Public Defender in Criminal Court, Room No. 2, for approximately eight months, however, he had no trials.

5. That in early 1963, he was again appointed Public Defender in the Marion Criminal Court, Division 2, and that at present, he still occupies that position.

6. That prior to the case of State v. Varderman Shack, he had participated in one criminal jury trial, that being a charge of robbery.

7. That prior to the trial of Varderman Shack, he had no experience in the trial or preparation of homicide cases.

8. At the time of his appointment to represent Varderman Shack, the defendant, Varderman Shack, could not speak due to an injury.

9. That Varderman Shack was able to talk approximately two weeks before the case was set for trial.

10. That he filed no motion for continuance of the trial date in order to give him additional time to confer with the defendant regarding his case.

11. That the defendant, Varderman Shack, did furnish him with names of witnesses to call in his behalf, which witnesses he was unable to locate, or felt that they could be of no value to defendant, and did not request a continuance to locate any of the witnesses who were not found.

12. He did not call any character witnesses for the defendant, Varderman Shack, and that the defendant's case, for all practical purposes, was the sole testimony of Varderman Shack.

13. That the jury trying the case deliberated less than one-half hour, finding the defendant guilty and recommending that he suffer death, all of which astonished the Affiant herein.

14. That prior to the trial of the defendant, he devoted approximately 18 hours to the preparation and defense of Varderman Shack at his trial.

15. That he did not advise the defendant of his previous experience in the practice of law.

16. That he did not feel that a jury would recommend the death penalty for the defendant both before and during the trial, and at no stage of the proceedings was concerned about the defendant receiving the death penalty."

Thereafter, the Trial Court conducted a hearing on the petition for permission to file the belated motion for new trial. And, after such hearing, the Trial Court overruled the petition for permission to file a belated motion for new trial. Thereupon, the appellant, by and through his appellate counsel, Mr. Castor, asked this Court for a writ of certiorari pursuant to Supreme Court Rule 2-40(a), 1964. The petition

for writ of certiorari was based upon the circumstances described *supra*.

By written opinion on May 5, 1965, this Court directed that there be a consolidation of the appeal of Varderman Shack from his conviction then pending in Cause No. 30467 in this Court with the matters pleaded in the petition for writ of certiorari in Cause No. 30730. See *Varderman Shack v. State of Indiana* (1965), 249 Ind. 60, 206 N. E. 2d 614.

After the writ of certiorari was issued, the transcript of the proceedings on the petition for permission to file the belated motion for new trial was prepared and filed in this Court; and this case has been briefed both on the merits of the appeal and also on the alleged error complained of by Varderman Shack in the Trial Court's ruling on the petition for permission to file a belated motion for new trial.

We treat, here, the question of whether or not the Court committed error in overruling the petition for permission to file a belated motion for new trial. The gravamen of appellant's petition for permission to file a belated motion for a new trial alleged that the attorney representing him before the Trial Court was incompetent and that such representation was inadequate, and, therefore, appellant was denied his Constitutional Rights in violation of the 6th and 14th Amendments of the United States Constitution, and in violation of Article I, Section 13, of the Constitution of the State of Indiana.

In order for us to make a determination as to whether or not Varderman Shack had adequate and competent counsel in the defense of this most serious indictment, we look first to what Mr. Nedeff, himself, said concerning his conduct of this case.

He had been graduated from Law School six (6) years prior to the time of this trial. Ninety five (95%) percent of his practice was in civil matters and only five (5%) percent in criminal matters.

In his first tour of duty as a Public Defender, he did not try one case. He started his second tour of duty as a Public Defender at the beginning of the year 1963. It will be noted that he filed his appearance for Varderman Shack in Criminal Court on the 7th day of January, 1963; so it is very obvious that he had very little experience on his second tour of duty as a Public Defender at the time he undertook the duties and responsibilities of defending Mr. Shack.

Prior to the time of the Shack case, Mr. Nedeff had participated in one (1) criminal jury trial—that being a charge of robbery. He had never participated in the trial and preparation of a homicide case.

On the 7th day of January, 1963, Mr. Shack was unable to speak due to an injury that he had received. He was only able to talk two weeks prior to the time the trial was to commence; yet, Mr. Nedeff did not ask for any continuance in order to give him additional time to confer with the defendant or to prepare his case.

Mr. Shack furnished Mr. Nedeff with the names of witnesses to call on his behalf, but Mr. Nedeff was either unable to locate them, or felt they could be of no benefit to Mr. Shack and he did not request a continuance in order to locate any of the witnesses who were not found at that time. He did not call any witnesses for Mr. Shack, and the sole witness, for all practical purposes, was the appellant himself.

The jury trying Mr. Shack deliberated less than one-half hour before finding him guilty and recommending that he suffer death.

Mr. Nedeff devoted approximately eighteen (18) hours to the preparation of the defense of Mr. Shack. Mr. Shack was without knowledge, prior to trial, of Mr. Nedeff's experience or lack of experience. Mr. Nedeff did not, at any time, feel that the jury would recommend a death penalty and he was not concerned, at any stage of the trial, about the defendant receiving the death penalty. Mr. Nedeff was called as a

witness and testified that he has made a living out of the practice of law since he was admitted and he has appeared in Courts, and prior to 1963, had not had more than three (3) jury trials which included any civil cases he may have handled. The bulk of his criminal cases had been before a Court and without a jury. He had assisted in the trial of one (1) jury case on a robbery charge and the defendants were found guilty of larceny.

He saw Mr. Shack a number of times between the time of his appointment in January and the trial date.

Mr. Nedeff did not request any instructions on behalf of Mr. Shack from the Trial Court. During part of the eighteen (18) hours of preparation he did research work at the law library on homicides in various degrees. He did visit the scene of the crime. He does not know of any other preparation that he could have made for this case.

On cross-examination, Mr. Nedeff admitted that he freely and voluntarily signed the affidavit that was submitted with the motion for new trial; that he signed the affidavit before the notary.

The Deputy Prosecuting Attorney inquired of Mr. Nedeff whether or not a trip to Michigan City Prison which houses the execution chamber had anything to do with him signing the affidavit, and the following question was asked:

"Don't you believe your feelings and emotions about this death penalty had something to do with your signing the affidavit?

Mr. Nedeff answered:

"I could put it plainer. If I could save Varderman Shack, or any man, from the electric chair I would sign most anything."

Later on, by examination by Mr. Castor, Mr. Nedeff again related that the facts in the affidavit were true—that he was not threatened or coerced.

We must first dispose of the question of whether or not James Nedeff committed perjury when he signed the affidavit attached as an exhibit to the motion for permission to file a belated motion for a new trial. Apparently it was the intention of the prosecuting attorney, on cross-examination, to attempt to prove that Nedeff was so influenced by his trip to the penitentiary, and the building that houses the death chamber, that a duly licensed and admitted attorney would perjure himself for and on behalf of his client. From all of the evidence here, we do not adopt that conclusion.

Nedeff reiterated time and again that the matters and facts set forth in the affidavit were true. He may have been willing to tell the truth because of the emotional shock that he suffered as a result of his visit to the Michigan City Penitentiary. He may have been willing to put on paper facts concerning his defense, or lack of defense, for Varderman Shack, that would have a definite effect on Nedeff's professional future—but we conclude that he did not lie.

We must decide, then, as a matter of law, whether or not, under the facts set out in the Nedeff affidavit, Varderman Shack was afforded his Constitutional Rights. The guilt or innocence of Varderman Shack is not an issue.

"The guilt or innocence of an accused does not determine whether or not he should plead guilty or stand trial. He is entitled to be advised as to all his legal rights involved under the law and the facts, and even though guilty he has the right to require the state to prove every material allegation of the offense charged." *Abraham* v. *State* (1950), 228 Ind. 179, 91 N. E. 2d 358.

In many cases it would be impossible for this Court to fix guidelines as to the requisite number of hours that an attorney should spend in preparation of the defense of a case. This Court has written on the subject of adequate preparation and adequate time for preparation,

but we must conclude that each case stands on its own facts. However, see *Bradley* v. *State* (1949), 227 Ind. 131, 84 N. E. 2d 580, 582. *Lloyd* v. *State* (1960), 241 Ind. 192, 170 N. E. 2d 904. In *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848, the following language is used:

". . . Nor need we now draw a line, if there is one, between competency and incompetency. The spirit of these constitutional provisions requires that an accused must have something more than a perfunctory presentation. It is true whether the attorney is appointed by the court or engaged by the accused."

Appellant has called our attention to the concurring opinion of Judge Emmert in *Hillman* v. *State* (1954), 234 Ind. 27, 123 N. E. 2d 180, in which he stated:

"A careful lawyer would have double-checked the story of appellant. See *Rhodes* v. *State*, 1927, 199 Ind. 183, 156 N. E. 389. The transcript discloses that the prosecuting attorney, in compliance with the criminal code, endorsed the names of six witnesses on the back of the affidavit. None of these were ever called or interviewed by appellant's counsel, although as a matter of law he knew the state had listed them as witnesses against his client. Even a casual investigation of the evidence the police officers were prepared to give would have disclosed that a confession had been signed."

We believe it is unnecessary to labor this matter further. Under the affidavit signed by Mr. Nedeff which we believe, Varderman Shack did not have competent counsel in his trial nor did he have an adequate defense. We can decide as a matter of law that Mr. Nedeff did not make adequate preparation when he expended only eighteen (18) hours in factual investigation; legal research; inquiry concerning sanity; and all of the other facets of inquiry properly to be disposed of by an attorney in the preparation of a felony as serious as Murder in the First Degree. This is particularly true since Mr. Nedeff had never tried a homicide case. This would probably be true even with one of the legal giants of trial practice; but, a seasoned trial lawyer would deem it un-

thinkable to go to trial with only eighteen (18) hours of preparation. He would deem it malpractice not to seek a psychiatric examination of his client in order to determine whether or not a plea of insanity would be interposed. A mature practitioner who had tried many cases would spend several times eighteen (18) hours in legal research alone in order to properly prepare, for the Court's consideration, tendered instructions touching on the various elements of murder.

We have said many times that we should not, in hindsight, second guess the strategy of trial counsel. Varderman Shack's trial was without strategy. To expect Mr. Nedeff, with his inexperience and lack of preparation, to afford Mr. Shack his Constitution Rights may be likened unto a medical graduate who has been licensed for six (6) years, and has been engaged in the general practice, but who has never held a scalpel and is expected to perform a delicate piece of brain surgery. This would be particularly reprehensible if competent neurosurgeons were available.

There are competent trial counsel available for Varderman Shack and one should be furnished.

"... most courts considering in a post-conviction proceeding, the question of incompetency of retained counsel are generally agreed that the judgment of conviction is void when counsel's representation has been so inadequate as to make the trial a farce and a mockery of justice, thereby denying the accused a fair trial (due process of law), or invading his constitutional right to the effective assistance of counsel." 74 ALR 2d, p. 1403, § 4(b).

"The right to counsel is one of historical importance, persistently adopted by the framers of the constitutions of the original colonies to correct a recognized deficiency in the common law of England as it then existed; courts carefully protect the right, and will not condone a perfunctory compliance through which an accused defendant is given the appearance of the help of a lawyer, but is actually denied substantial aid. State ex rel. Parker v. Jameson (1953), 75 SD 196, 61 NW 2d 832, in which the court said: 'A lawyer whether paid or not, whether unsympathetic and un-

believing in his client's case or not, whether the offense alleged is abhorrent or in high disfavor with the current public view or not, is bound by the ethics of his profession and our judicial system to present the cause of the deserving and the despicable defendant with equal zeal. Only thus can this right, written into our constitutions, be made a reality'." 74 ALR 2d, p. 1404, § 4(b).

The Court committed error in denying Varderman Shack the right to file a belated motion for new trial, and this judgment is reversed and the Court is directed to permit the filing of the belated motion for new trial, and in the interest of expediting a re-trial of Varderman Shack, the Court is ordered and directed to grant the belated motion for new trial.

Hunter, C. J., and Jackson and Mote, JJ., concur.

Arterburn, J., concurs with opinion.

## CONCURRING

ARTERBURN, J.—It is the concern of the bar of this State and this Court, which fixes the standard of competency, to have to set aside a conviction because of incompetency of a member of the bar representing a defendant in a criminal case. I therefore feel the competency of the attorney involved in this case should be referred to the Disciplinary Commission for investigation and report as to whether or not disbarment proceedings or other disciplinary action should be taken. See: Shack v. State (1965), 249 Ind. 60, 206 N. E. 2d 614, p. 617.

NOTE.—Reported in 231 N. E. 2d 36.