WRIGHT *v.* STATE OF INDIANA.

[No. 868-S-129. Filed July 7, 1969. No petition for rehearing filed.]

*Robert G. Mann*, Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Curtis C. Plopper, Aaron T. Jahr*, Deputies Attorney General, for appellee.

ARTERBURN, J.—Appellant was tried and convicted of first degree arson on October 19, 1967. On March 7, 1968, the trial court granted appellant's petition for permission to file a belated motion for a new trial. The belated motion for a new trial was then filed and claimed that the defendant

did not have a fair trial for the following reasons: that he was forced into a trial without any opportunity to confer with his court-appointed counsel and without any time to secure witnesses in his defense. There are also other allegations with reference to the claim that the evidence was insufficient for a conviction, to which we need not give any consideration.

At the hearing on the belated motion for a new trial the evidence was uncontradicted that the appellant was under a charge of assault and battery and carrying a deadly weapon and also under the present charge of arson. After his counsel was appointed by the court the appellant testified that the following took place:

"Q.  Alright and then what happened?

"A.  Well, he [the trial attorney] said I'll talk to you later, I'll come over and talk to you about it and I waited until October 19 and he never did come back, so the day of the trial he came back in the cell block back there. (Parenthesis added.)

"Q.  That's the lock up here in the court room?

"A.  Yes, and he said are you ready to go to trial and I said 'On the assault and battery and drawing a deadly weapon, I am, because I had my witnesses, Bill Mooris and Burger Johnson.'

"Q.  Now, you stated you were ready for trial on the appeal cases from Municipal Court?

"A.  Yes.

"Q.  Assault and battery and concealing a weapon?

"A.  Yes, because I asked him . . . told him to get a continuance on the arson until I can get my witnesses to establish where I was at that night and he said, 'Well, let me talk to Bill Synder,' who Bill Synder is I don't know.

"Q.  The prosecuting attorney, is that who he is referring to?

"A.  Well, I assumed that's who it might be, anyway he came back and said 'alright, we'll take care of half of it' and he brought me out of the courtroom told

me . . . pointed to me to take a seat and him and the prosecutor got up and walked up in front of the Judge and they talked, what they talked about I didn't know and he come back and sit down and then summoned Laura Miles.

"Q. Do what?

"A. They summoned Laura Miles to the stand.

"Q. To the stand where you are sitting now?

"A. Yes.

"Q. Alright, then what else?

"A. And started showing her some pictures and then I knew I was on trial for arson,

"Q. Then what did you do?

"A. I didn't know what to do.

"Q. What did you say to Laswell at that time?

"A. He wouldn't talk to me, I tried to whisper to him but he didn't turn around.

"Q. So they tried you on the arson case while you at the present time thought that you were being tried for the appeal cases from Municipal Court, is that correct?

"A. I was supposed to be tried for the appeal cases.

"Q. Did you have witnesses that you wanted to bring in as opinion to establish and incorporate your evidence?

"A. Yes, I did and I . . .

"Q. How many?

"A. About 8 or 9.

"Q. Did you give Mr. Laswell a list of those?

"A. Just before we came in the courtroom he asked me who they were and I told him that's when I told him that I wanted a continuance to get them and that's when he said you had one witness here and I said I want the rest of them.

"Q. Did you confer with Mr. Laswell in the Marion County Jail while you were there?

"A. No, sir.

421

"Q. How long were you over there?

"A. Six months.

"Q. Six months, he didn't come to see you or talk about this arson case?

"A. No.

"Q. Were you able to advise him to the facts related to this charge in order that he could properly present it to the court to establish your innocence?

"A. Not until the day that I came over, the 19th, I wasn't able to and ...

"Q. Tell me ...

"A. I asked ...

"Q. Were you ever in law school?

"A. No, sir.

"Q. You know anything about preparing your own case and defense in a matter of this type?

"A. No, sir, I had a friend who was in the jail that knew a little law.

"Q. You've never had any law have you?

"A. No, I asked him to help me file a Writ of Alibi because I didn't have enough money. I had 50 some dollars in the bank and it wasn't enough to get a lawyer to do it and this inmate filed me a writ and he said he filed a writ of alibi and filed it in Criminal Court Two, sent it over at two o'clock and it was sent back Friday denied.

"Q. Were you advised of your rights to hear the case heard by jury?

"A. No.

"Q. Was there a waiver, do you remember signing a waiver, a piece of paper waiving your right to trial by jury?

"A. No.

"Q. Do you recall that?

"A. No, I never have.

"Q. Now, in your belated motion for new trial I understand that you alleged that the witnesses who testified against you that resulted in your conviction for six months in the Municipal Court were the same witnesses in this arson, is that correct, sir?

"A. That's correct.

"Q. And they have some hostility and hard feeling against you is that right? Prior to the time this happened?

"A. Yes.

"Q. What's the status of those two cases now that you appealed from the Municipal Court?

"A. Well, assault and battery, Laura Miles put against me she said it happened at the first week and she waits till three or four weeks later to put a charge against me.

"Q. Is Laura Miles this same prosecuting witness that testified against you in the arson case?

"A. Yes, sir.

"Q. Did she alleged that the arson happened after the assault and battery case?

"A. Yes, sir.

"Q. Would you say that this girl was bias and prejudice and under proper cross examination these facts would have been brought out to . . . in order that the court might have known the interest of the witness in the outcome of that particular ligitation?

"A. Yes, sir, Under proper investigation I think they both would be tried for perjury.

"Q. You feel there should have been more investigation as to your defence in this matter?

"A. Yes, sir.

"Q. Did you know this Laura Miles prior to this time?

"A. I've known her since 1956 personally.

"Q. Had she been a girl friend of yours at one time?

"A. No, sir.

"Q. Just close friends is that right?

"A. I went to school with her boys and then broke her son into the roofing business.

"Q. Now, you also led in this motion for a new trial, when all these things did happen you couldn't have form a specific intent to commit the offence because you were intoxicated at the time and some place else is that right?

"A. I was asleep at the Mahogany Bar.

"Q. Was this brought out in the trial?

"A. I brought it out but it was stricken from the record because of my not having an attorney to file a motion for an alibi.

"Q. So under the law in order to properly present it you would have had to have filed for you and in your behalf a notice of alibi on file?

"A. Yes.

"Q. Is that the reason you were unable to show you were elsewhere and in the condition that you stated at the time?

"A. That's correct.

"Q. Is this your first degree . . . or first conviction on an arson?

"A. Yes, sir.

"Q. Never been convicted of this before?

"A. No, sir.

"Q. Do you think this matter should be re-heard and a new trial granted in the matters committed through a court or jury and an opportunity for you to summons your witnesses and subpoena them rather to have them here to establish your defence also you would like the opportunity to file your motion of alibi by proving you were some place else other than the place that they alleged that you were in the affidavit?

"A. Yes.

"Q. Is that correct?

"A. Yes.

"Q. And you feel that also because of the duties of a public defender in this court that you weren't given full time to present your case and to have all the facts brought forth in your defence, is that correct?

"A. Yes.

"Q. You're not alleging in any way that Mr. Laswell was incompetent or what have you but you know that if he knew the circumstances and facts in this case you would have been able to establish your innocence, is that correct?

"A. That's correct.

"Q. You may cross-examine.

MR. CONNER: No questions.

MR. MANN: Nothing further, Your Honor.

THE COURT: Step down, Mr. Wright, show the evidence heard and the matter taken under advisement. I'll rule on it promptly."

There was no evidence offered by the state to contradict this testimony. The state did not see fit to call the court-appointed counsel of the defendant to in any fashion contradict the facts the defendant related. It appears therefore from the uncontradicted evidence in the record that the appellant was forced into a trial as a surprise, without warning and without an opportunity to consult his attorney, and his attorney failed to procure witnesses for his defense. It is quite evident from this uncontradicted evidence that regardless of the guilt or innocence of the appellant, he did not receive a fair trial.

It is to be regretted that the state did not see fit to call counsel appointed to represent the defendant to rebut the charges of incompetency and neglect in the representation of the appellant. The attorney involved here should have had the opportunity to refute the charges. We have held in this state that an attorney may intervene in an action in which he is charged with personal misconduct to protect his reputation and any reflection upon

his integrity. *Dodd v. Reese* (1939), 216 Ind. 449, 24 N. E. 2d 995.

We have said previously that we need not, in a case like this, draw an exact line between competency and incompetency of counsel in order to grant the defendant a fair trial. A defendant is entitled to more than a perfunctory representation. *Wilson v. State* (1943), 222 Ind. 63, 51 N. E. 2d 848.

In *Shack v. State* (1967), 249 Ind. 67, 231 N. E. 2d 36, 43, this Court further said:

> "In many cases it would be impossible for this Court to fix guidelines as to the requisite number of hours that an attorney should spend in preparation of the defense of a case. This Court has written on the subject of adequate preparation and adequate time for preparation, but we must conclude that each case stands on its own facts. However, see *Bradley v. State* (1949), 227 Ind. 131, 84 N. E. 2d 580, 582. *Lloyd v. State* (1960), 241 Ind. 192, 170 N. E. 2d 904. . . ."

It is evident to us from the uncontradicted facts in this case that the appellant did not receive a fair trial because of failure of counsel to properly represent him.

The court erred in overruling appellant's belated motion for a new trial, and the court is directed to grant the belated motion for a new trial and grant the appellant a new trial.

DeBruler, C. J., and Hunter, Jackson and Givan, JJ., concur.

NOTE.—Reported in 249 N. E. 2d 33.