## WEBSTER NICHOLAS *v.* STATE OF INDIANA.

[No. 871S221. Filed September 5, 1973.]

*Mrs. Harriette Bailey Conn,* Public Defender of Indiana, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

ARTERBURN, C.J.*—This is an appeal from a denial of post-conviction relief. On May 16, 1967, the Appellant was charged by affidavit with the crime of theft of property valued at more than one hundred dollars. The Appellant appeared with counsel on the same date and waived arraignment and pleaded not guilty to the offense. Trial was set for June 22, 1967, and Appellant was released on bond. On the trial date, Appellant asked permission to withdraw his former plea of not guilty and plead guilty. The trial judge questioned him as to his reason for seeking the change, and not satisfied with the defendant's explanation, refused to accept the guilty plea. Appellant waived trial by jury. The State submitted its evidence and rested, and the Defendant presented no evidence and rested. Having heard the evidence, the trial court found the Appellant guilty as charged. Thereafter, the Appellant was sentenced as follows:

> ". . . the Court, upon its finding of guilty heretofore entered on June 22, 1967, now finds and adjudges that Webster Nicholas is 42 years of age and guilty as charged of the crime of theft of property of more than $100 in value, and that as punishment therefore he be, and he is hereby ordered to pay a fine unto the State of Indiana in the penal sum of $1.00 plus the costs of this action taxed at $—w.o.r., and that he be, and he is hereby, disfranchised and rendered incapable of holding any office of trust or profit for a determinate period of one year.
>
> Upon the recommendation, however, of the Prosecuting Attorney . . . Court now suspends sentence as to imprisonment so long as the defendant behaves well and obeys all laws of the State of Indiana . . ."

---

* This case was reassigned from another Justice to the writer of this opinion on June 27, 1973.

Thereafter, on August 7, 1967, a petition was filed by the Appellant's probation officer alleging that he had violated his probation by assaulting one Wanda Teasley by shooting a shotgun blast into her car, thereby injuring her. The Appellant pleaded not guilty to the probation officer's charge, and after a hearing on the evidence, he was found guilty of violating his probation. The court thereupon ordered the execution of the sentence under the original conviction of theft and sentenced the Appellant to imprisonment in the Indiana State Prison for a period of not less than one (1) nor more than ten (10) years. On December 16, 1967, Appellant petitioned for permission to file a belated motion for new trial. Permission was granted and the Appellant filed his motion which was overruled. On May 16, 1968, Appellant filed a petition for writ of certiorari to this court to review the denial of the belated motion for new trial. This court denied the petition on June 28, 1968. Thereafter, the Appellant filed a pro se motion to proceed in forma pauperis in the Federal District Court. The United States District Court for the Southern District of Indiana issued its judgment in the case of *Nicholas* v. *George W. Phend, Warden.* The findings of fact contained in that judgment have been made a part of the record now before this court.

On August 6, 1970, Appellant filed a petition for Post-Conviction relief. A hearing was held on September 17, 1970, and after hearing the evidence, the court denied the relief sought. A timely motion to correct errors was filed and it is from the overruling of that motion that this appeal is taken. This is the appellant's first appeal to this court for review.

The Appellant first contends that the evidence adduced at trial was insufficient to sustain his conviction. The statute under which Appellant was charged and convicted, IC 1971, 35-17-5-3 [*Burns Ind. Ann. Stat.* § 10-3030 (1972 Supp.)], reads as follows with respect to the crime charged:

"Theft in general—A person commits theft when he (1)

knowingly: (a) obtains or exerts unauthorized control over property of the owner or

\* \* \*

(2) either: (a) intends to deprive the owner permanently of the use or benefit of the property; or \* \* \*"

The above legislation was amended in 1971 and the word "permanently" was deleted from clause 2(a). The Appellant asserts that the evidence in question was insufficient to sustain the conclusion that the truck in question was taken with the intent to "permanently" deprive the owner of the use or benefit thereof. With this we cannot agree. When the sufficiency of evidence is raised on appeal, this court will neither weigh the evidence nor resolve questions concerning the credibility of witnesses. Instead, only that evidence most favorable to the state will be considered together with all reasonable inferences to be drawn therefrom, and if, from that viewpoint, there is substantial evidence of probative value to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Moore* v. *State* (1973), 260 Ind. 154, 293 N. E. 2d 28; *Dunn* v. *State* (1973), 260 Ind. 142, 293 N. E. 2d 32; *Tuggle* v. *State* (1969), 253 Ind. 279, 252 N. E. 2d 796. A review of the evidence most favorable to the Appellee discloses the following facts.

On May 15, 1967, the defendant, Webster Nicholas, was observed fastening a chain to a pick-up truck belonging to the Shelby Farm Supply, Inc. The witness, Jack Krise, immediately went into the house and called the sheriff. A short time later, the Appellant went up to the house and asked Mr. Krise if he had a phone. When he was told that the sheriff had been called, the Appellant ran back to the truck, got in, and drove off. Mr. Krise and some other men followed the truck and stopped it, thereby apprehending the Appellant. Appellant was drunk but able to talk and move around. It was established that the Appellant never received permission to drive

the truck or to use it for any purpose. Nor was he an employee of the Shelby Farm Supply, Inc. The deputy sheriff, William Graham, testified that when he arrived at the scene where the Appellant's own truck had been run off the road, there was no one present. Later, however, he apprehended the defendant in the truck belonging to the Shelby Farm Supply, Inc.

We believe that all the elements of the crime charged were established by the evidence before the trial judge. The Appellant very clearly (1) knowingly (2) obtained or exerted (3) unauthorized control over the automobile (4) with the intent to deprive the owner permanently of the use and benefit of it. From the evidence adduced at trial, the trier of fact could have reasonably concluded that the unexplained possession of a recently stolen truck coupled with the Appellant's failure to return it and his attempts to flee to avoid being identified as the thief established the requisite intention to permanently deprive the owner of the truck. We believe that the language of the case of *Swift* v. *State* (1970), 255 Ind. 337, 264 N. E. 2d 317 is fully applicable to the case at bar:

> "On June 11, 1969, William Stroud drove his wife's 1967 Chevrolet Camaro to 4006 Meadows Drive and parked it. The same day, the automobile was taken from that location by someone other than the owner without permission or authorization. Later that same day at 5:11 P.M., Police Officer Carroll Rosenbarger saw the automobile at the Twin-Aire Car Wash with the defendant and another man preparing to wash it. As the officer pulled up, the two ran and the defendant was apprehended. The defendant was found to have the keys to the stolen car in his pocket. The other man, only known to the defendant as 'Willie', escaped apprehension.
>
> Our first consideration concerns whether the state [sic] has met its burden of establishing guilt beyond a reasonable doubt. Here the state [sic] was required to establish that appellant (1) knowingly (2) obtained or exerted (3) unauthorized control over the automobile (4) with the intent to deprive the owner permanently of it. Ind. Ann. Stat. § 10-3030 (1956 Repl.) (1970 Supp.). The evidence clearly shows appellant knowingly had possession of the keys to the

automobile while in near proximity to it, thus plainly establishing his control of it. It was further shown that the exercise of dominion was unauthorized by the rightful owner. Appellant asserts however that it was not demonstrated that he took control with the intent to permanently deprive the owner of the automobile's benefit and use. But we have earlier held that possession of stolen property shortly after a theft may support an inference of guilt. Freeman v. State (1967), 249 Ind. 211, 231 N. E. 2d 246. In further support of the state's [sic] view of the case is the fact that appellant and a companion attempted to flee when they observed a police officer approaching."

*Id.* at 338-39, 264 N. E. 2d at 318-19. See also *Tuggle* v. *State* (1969), 253 Ind. 279, 252 N. E. 2d 796. We believe the Appellant was properly convicted of the crime charged. The Appellant asserts that IC 1971, 35-17-5-9 [Burns Ind. Ann. Stat. § 10-3036 (1972 Supp.)] is the applicable statute in these circumstances. That section provides in part:

*"Obtaining or exerting unauthorized control over a vericle.—* A person commits a crime when he: (1) knowingly obtains or exerts unauthorized control over the vehicle of the owner *under circumstances not amounting to theft;* or * * * (emphasis added)."*

We believe that the circumstances surrounding the taking of the truck in the case at bar very clearly amounted to theft. Thus, the above statute and its lesser penalty have no application here.

The Appellant next contends that the trial court erred in refusing to accept the defendant's guilty plea after the defendant had asked permission to withdraw his plea of not guilty. It is difficult to comprehend the logic or precise meaning of this alleged error. The defendant wanted to plead guilty. The trial court, observing the duty imposed on it, quite properly inquired of the defendant whether his plea was knowingly and intelligently made:

"A. Well, sir I would like to plead guilty and get it over with. I mean go out the best way I can.

Q. Well the court just doesn't accept pleas of guilty to a felony unless it's satisfied that you're guilty.

A. Well, I'm guilty.
Q. Did you steal this truck?
A. Yeah, I guess I did.
Q. Well it isn't any, of no, it isn't any guessing proposition. Did you or didn't you?
A. Well, sir, can I say one thing?
Q. Yes.
A. I was so drunk, I didn't know what I was doing, I'll plead guilty I guess. I don't remember nothing, nothing at all, and that's right.
Q. The court will not accept your withdrawal of plea of not guilty and the plea of not guilty stands. This cause now stands for trial, is the State ready for trial?"

It is quite clear from the above colloquy that the court was not certain that the Defendant understood the consequences of what he was doing, and was of the view that the tendered plea of guilty may not have been offered knowingly and intelligently. The court was following established legal principle in making inquiry as it did. We have held that a trial court is required to determine whether the plea was entered knowingly and voluntarily prior to acceptance or refusal of the plea. *Campbell* v. *State* (1951), 229 Ind. 198, 96 N. E. 2d 876. The Appellant has not shown how he was prejudiced by the trial court's caution in refusing to accept the guilty plea. Requiring the state to establish every material element of the crime charged by producing evidence is surely not prejudicial to a defendant. In fact, it benefits him. There was no error in refusing to accept defendant's tendered guilty plea.

The Appellant next contends that it was error for the trial court in the Post-Conviction proceedings now before us to include in its findings of fact that the Appellant had failed to file a timely motion for new trial and to include the findings of the United States District Court judgment in the record before this court. It is urged that reliance on the District Court's findings was in error since those findings are not res judicata of the issues now

before this court. We believe that it was proper for the trial court to include these matters in its findings. The collateral proceedings undertaken by the Appellant in this case were complicated, and we think it was necessary in order to give a complete understanding of his decision for the trial judge to include as much of the record as possible in his findings. In addition, the Appellant has ultimately been granted an appeal of those issues properly preserved in the record. Therefore, whether he filed a timely motion for new trial or not is not a fact which prejudices the determination of the issues raised in his petition for post-conviction relief. Finally, the Public Defender admits in her brief that in representing the Appellant in this proceeding, she agreed to stipulate the Federal District Court judgment rendered in *Nicholas* v. *Phend, Warden* as part of the record before the trial judge here. The Appellant cannot now be heard to complain that matters adverse to the Appellant were contained in that judgment and that thereby the Appellant was prejudiced. The trial court's findings of fact were entirely proper.

The Appellant further contends that he was denied due process of law and a fair trial due to the incompetence and ineffectiveness of his trial counsel. For the purpose of focusing on the precise allegations made by the Appellant in this regard, we here set out the particular contentions made in his brief:

"1. The court erred in finding that the defendant had a 'trial' when his attorney refused to cross-examine the state's [sic] witnesses after the court had refused to accept a guilty plea negotiated by such attorney without having interviewed witnesses of whom the defendant advised him (including one whose testimony when finally produced negated the necessary intent to deprive an owner permanently of the use or benefit of a truck taken from the vicinity of the defendant's ditched vehicle after he was surprised in attempting to attach a chain onto the stolen one.)

"2. The court erred in granting no relief after specially finding that the trial on a plea of guilty was nothing more than a guilty plea hearing (as admitted by defense counsel

stating his belief that the Prosecuting Attorney would not, after conviction of one whom his attorney believed guilty, recommend a suspended sentence on the crime charged should the attorney either cross-examine prosecution witnesses making a prima facie case or offer any defense witnesses), particularly since the guilty plea was rejected as being involuntary and without knowing the consequences.

"5. The court erred in including in its finding of facts that another court had found that the attorney investigated the facts by discussing the facts and interviewing the witnesses when such attorney admitted that he neither interviewed witnesses suggested by his client nor considered the possibility that only an included offense could be proved against the defendant-appellant.

"7. The court erred in finding no violation of the defendant-appellant's constitutional right to due process of law, i.e., trial and effective assistance of counsel for his defense on a plea of not guilty."

All of the issues raised by the above-quoted contentions were litigated on Appellant's petition for a writ of habeas corpus filed in the United States District Court for the Southern District of Indiana. Judge S. Hugh Dillon entered findings of fact in the case of *Nicholas* v. *Phend, Warden,* as follows, in part:

"The Petitioner was not pleaded guilty by his attorney, Mr. Good, against his wishes, as he now claims. The transcript of the trial shows the Petitioner voluntarily pleaded guilty before the judge, who, upon questioning him at some length, determined that Petitioner was being evasive, would not accept the plea and required the State to present its proof. Judge Ellison was convinced that Petitioner was guilty of the crime of theft beyond a reasonable doubt after having heard all the evidence. However, the Court suspended the sentence imposed upon the petitioner, so that he is presently incarcerated only because of a subsequent violation of probation.

### III

"The Petitioner misrepresented the facts when he stated that Mr. Good, his trial attorney, because of incompetence and disgust with the Petitioner, sat back in his chair and

waived opening and closing arguments, refused to cross-examine and introduced no evidence. The facts were that since the State made only short statements it was not necessary to make opening and closing arguments; that cross-examination was not advisable because the witnesses were substantial citizens who were definite in their identification and that no evidence was available for introduction on behalf of Petitioner.

## IV

"That, although Petitioner claims he was denied the opportunity and the right to take the witness stand in his own defense and to present testimony of his own witnesses, Petitioner now testifies the only fact he and his witnesses would testify to was that he was not in the truck, testimony which was directly contradicted by all the State's evidence.

## V

"The Petitioner did not show, as he claimed, that he had witnesses who would testify to the fact that he was with them during the time of the theft. The facts show that he was positively identified by substantial, unimpeachable eyewitnesses who captured him inside the stolen motor vehicle and that he was arrested by a police officer who removed him therefrom, and that the Petitioner was well known to all the witnesses.

## VI

"That under the circumstances of this case, there was no credible defense to be presented and that Mr. Good engaged in the only activity available to protect his client. Plea bargaining is a recognized legal tactic and certainly not one to be condemned in this case, for the Prosecutor was willing to recommend a suspended sentence on the basis of the absence of felonies in Petitioner's past record and the fact that restitution of the stolen property had been made.

## VII

"The Petitioner's allegation that his attorney did not investigate the facts surrounding his being charged for the crime of theft was false. The facts show that his attorney did discuss the case with the Prosecutor and interviewed the witnesses in a futile attempt to formulate a defense to the charge of theft.

## VIII

"The Petitioner lied when he stated that his attorney refused to discuss the case with him until 5 minutes before

the trial. In fact, it was shown that Petitioner conferred with his attorney many times, and the transcript shows that during arraignment and trial, Petitioner had ample opportunity to discuss and did discuss the case with his attorney.

## IX

"The Petitioner did not tell the truth when he stated he had never retained his defense lawyer on the other occasions, for other legal matters, before the trial of which he now complains. The evidence shows incontrovertibly that he had retained that lawyer on some ten misdemeanor charges prior to the occasion of this arrest and trial for theft, and that he was well acquainted with his defense attorney.

* * *

## XIV

"That, although Petitioner now claims that Mr. Good incompetently represented him at this trial, Petitioner did in fact request Mr. Good to represent him on at least two occasions subsequent to the trial for theft; showing in fact that Petitioner did not believe Mr. Good was incompetent."

We believe that the judgment of the United States District Court that the Appellant had a fair trial and was not denied the effective assistance of counsel is res judicata as to the issues presented by the Appellant relating to alleged denial of due process and inadequate representation. Were it otherwise, there would be no end to the number of times a convicted person could seek review of the proceedings. Even if the decision of the United States District Court had not intervened prior to the Post Conviction proceeding now before us, we think the Appellant was adequately represented by his trial attorney. As we noted in the case of *Lowe* v. *State* (1973), 260 Ind. 610, 298 N. E. 2d 421, "In our view, there are, realistically speaking, some cases that just cannot be won simply because the evidence and witnesses against an accused are so overwhelming as to approach irrefutability." Here, the Appellant's attorney was obviously convinced that Mr. Nicholas was guilty of the crime of theft of property worth one hundred dollars or

more. The attorney engaged in a recognized and well-accepted procedure in attempting to reduce the penalty that his client would have to suffer upon conviction. Appellant's constitutional rights were not violated in any way as a result of his attorney's efforts to accomplish this goal on behalf of his client. There was no plausible defense available to the Appellant. Having reviewed the testimony of Wanda Teasley given at the Post-Conviction hearing, we are unable to see how her account could have assisted the Appellant in his defense. An attorney is not required to do a futile thing. We are of the view that the introduction of Wanda Teasley's testimony would have availed the defense nothing. Thus, Appellant's attorney was not incompetent for failing to call her as a witness.

Appellant's final contention is that the trial court erred in approving the sentencing of the defendant to a term of from one (1) to ten (10) years when it revoked his probation and modified his original suspended sentence. Appellant asserts that his resulting sentence was not for the crime of theft of property valued at one hundred dollars or more for which he was convicted but for the ". . . nonexistent crime of Violation of Probation and Suspended Sentence . . .". The penalty for the crime of which Appellant was convicted is set out in IC 1971, 35-17-5-12 [*Burns Ind. Ann. Stat.* § 10-3039 (1972 Supp.)] as follows:

> "(3) A person convicted of theft of property of one hundred dollars [$100] or more in value shall be fined in any sum not exceeding five thousand dollars [$5,000] or imprisoned for not less than one [1] year nor more than ten [10] years, or both, and be disenfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

The power to suspend the execution of a sentence has been conferred upon the courts by IC 1971, 35-7-1-1 [*Burns Ind. Ann. Stat.* § 9-2209 (1972 Supp.)]. IC 1971, 35-7-2-2 [*Burns Ind. Ann. Stat.* § 9-2211 (1972 Supp.)] provides in pertinent part:

". . . If it shall appear that the defendant has violated the terms of his probation or has been found guilty of committing another offense, the court may revoke the probation or the suspension of sentence and may impose any sentence which might originally have been imposed."

The original trial court could have sentenced the Appellant to suffer the full penalty for the crime of which he was convicted, but chose instead to suspend the imprisonment portion of the sentence. Having judicially determined thereafter that the Appellant had violated the terms of his probation by committing an illegal act, the court clearly had the authority to impose the one (1) to ten (10) year sentence provided for under the applicable statute. Therefore, the trial court which heard the post-conviction proceeding did not err in approving the sentencing of Appellant.

For the reasons stated, the judgment of the trial court is affirmed.

Givan, Hunter, Prentice, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—On the day the Prosecutor and defense counsel appeared before the court with appellant, each fully expected that the plea of guilty would be routinely accepted and that the prosecutor's recommendation of probation would be favorably viewed by the Judge. Neither side expected to engage in a trial that day. But, when the trial judge heard the accused's denial of any knowledge of certain aspects of the alleged offense and refused to accept a plea of guilty, and stated: "This cause now stands for trial. . . .", things changed radically. The State was to be put to its burden of proving the accused guilty of the offense beyond a reasonable doubt. If it failed to do so the accused would go free. The defense was put to its task of probing, testing and challenging the State's case and presenting its evidence. If it failed, an innocent man might go to jail. There is no room for doubt about what occurred following the refusal of the judge to accept

the plea of guilty. The accused was put to trial. The record shows a waiver of jury trial by the defendant. It shows a waiver of opening statement and closing argument by defense counsel. Witnesses were called and examined by the State.

In this trial, no cross-examination of the State's witnesses was had. No defense witness was called to testify. No theory of defense was offered. No opening statement or closing argument was made. Surely this is the kind of representation considered perfunctory and condemned in *Castro* v. *State* (1925), 196 Ind. 385, 147 N. E. 321; *Wilson* v. *State* (1925), 222 Ind. 63, 51 N. E. 2d 848; *Shack* v. *State* (1967), 249 Ind. 67, 231 N. E. 2d 36.

I would grant a new trial in this case.

NOTE.—Reported in 300 N. E. 2d 656.